[Civ. No. 2743.   First Appellate   District, Division Two.—April 15, 1919.]

## A. C. DUERR, Respondent, v. WILLIAM R. SLOAN et al., Appellants.

[1] ACCOUNT STATED — ACTION UPON — RECOVERY.—In a suit upon an account stated, the plaintiff must recover upon the account stated or not at all.

[2] ID.—NATURE OF.—An account stated constitutes a new contract, either express or implied, into which all prior negotiations merge.

[3] ID.—BASIS OF.—An account stated must be based on prior dealings out of which an indebtedness arose.

[4] ID.—ARCHITECT'S SERVICES—RENDITION OF BILL—FAILURE TO OBJECT—IMPLICATION.—Where a bill for architect's services in connection with the construction of a building is rendered to the owner, in care of her agent, and neither such owner nor her agent objects to the account, the implication of an account stated thereupon arises as a matter of law.

[5] PRINCIPAL AND AGENT—UNDISCLOSED PRINCIPAL—RIGHTS OF THIRD PERSONS.—Where one deals with another believing him to be the principal, on subsequently learning that he was dealing with an agent of an undisclosed principal, he may recover either from the person with whom he dealt or from the undisclosed principal.

[6] ID.—KNOWLEDGE OF AGENT IMPUTED TO PRINCIPAL — FAILURE OF AGENT TO COMMUNICATE.—The fact that an agent fails to communicate certain knowledge to his principal cannot change the rule of law that the knowledge of the agent is imputed to the principal.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.   Daniel C. Deasy, Judge. Affirmed.

The facts are stated in the opinion of the court.

Sterling Carr for Appellants.

Keogh & Olds for Respondent.

BRITTAIN, J.—The defendants, substituted as executors of her will on the death of Sarah A. Bryan, appeal from a judgment on an account stated, for architects' services, assigned by O'Brien & Werner to the plaintiff.

In 1911 Mrs. Bryan owned an unimproved lot in San Francisco upon which was erected an apartment house of six stories, known as St. Anthony building. It cost ninety thousand dollars and was accepted September 23, 1913. On September 29, 1913, a statement was sent to the office of W. A. Sloan reading as follows:

"September 29, 1913.

"Mrs. Sarah A. Bryan,
     "c/o W. A. Sloan,
          "Mills Building, City.

"First set of plans and specifications for seven story
     steel frame Fire Proof Building to be erected
     on Geary & Hyde Streets.....................$2500.00
"Architectural services rendered for 2nd set of
     plans including details, specifications, and
     superintending based on cost of $90,000.00
     @ 5% ..................................... 4500.00

                                                 $7000.00
"By cash ............................ ............ 3000.00

"Balance due ...............................$4000.00"

The first set of plans, for which, on the statement, there was a charge of two thousand five hundred dollars, was prepared by the architects, together with specifications for a class A building upon the order of Jesse Bryan and Sloan. Bids for the construction of the building were being received when Jesse Bryan died. J. S. Bryan, a brother of Jesse Bryan, then instructed the architects to call the matter off and that they would take it up later on. Subsequently Sloan and J. S. Bryan did take the matter up with the architects and ordered the preparation of plans for the cheaper class C building which was erected. The first set of plans was used as a basis of the second set, at least as to the floor plans. The two Bryans were the sons of the owner, and Sloan was her brother.

Before the contract for the building was executed Sloan took to Mrs. Bryan a note and mortgage, which she executed without reading, upon which Sloan advanced the money for the payment of the building bills. Mrs. Bryan left everything about the building to Sloan. John Bryan mentioned the matter of the mortgage to her, and she told him to go

ahead and do everything that was necessary. After the mortgage was signed, Sloan took to Mrs. Bryan the building contract, which she also signed without reading. Sloan watched the progress of the building and paid all the bills. Neither O'Brien nor Werner ever met Mrs. Bryan, but on one occasion she telephoned to one of them, stating that she learned the name "St. Anthony" was on a foot-mat at the door, and as Jesse and she had a sentiment about this, she wanted the name taken up from there and put over the door. Later Mr. O'Brien telephoned to Mrs. Bryan with reference to something about the building, and she told him she knew nothing about it and had nothing to do with it. She testified she left the matter to Mr. Sloan.

[1] On behalf of the appellant many cases are cited to the proposition that in a suit upon an account stated, the plaintiff must recover upon the account stated or not at all, and that in this suit recovery cannot be had upon the original items of account. There can be no question of this rule. [2] If an account was stated, it constituted a new contract, either express or implied, into which all prior negotiations merged. (*Gardner* v. *Watson,* 170 Cal. 570, [150 Pac. 994].) Numerous citations are made to support other equally well-established rules. [3] An account stated must be based on prior dealings. In this case when the account was sent to Mrs. Bryan in care of Sloan the prior dealings between the parties had resulted in the completion and acceptance of the building. There must have been a pre-existing indebtedness. Upon this proposition counsel for the appellants quotes from 1 Corpus Juris, 681. Neither the text nor the cases cited would support a contention that where a bill for services is rendered and the benefit of the services has been received, the party charged may not expressly agree to the value of the services and create an account stated by an approval indorsed on the bill. The only difference between an account stated thus expressly created and one where the contract is implied by reason of the silence of the party receiving the account is that in one case the person charged says the account is correct, and in the other fails to say it is incorrect. [4] In this case the work was done, and the bill was rendered to Mrs. Bryan in the care of Mr. Sloan as her agent. If neither Mrs. Bryan nor Mr. Sloan, as her agent, objected to the account, the implication of an account stated there-

upon arose as a matter of law. Upon the question of whether there was an objection or not, the evidence was conflicting. The lower court determined this question in favor of the respondent. This court is bound by that determination. The account must have been brought home to the party to be charged in order to bind her by her silence. At the time the account was rendered and during the construction of the building, Mr. Sloan was in charge of the entire matter, with the consent of Mrs. Bryan. It is contended that his agency was not shown. This matter was also determined by the lower court adversely to the appellant. If there were conflict of evidence on the subject, the finding of the court would be conclusive here, but in view of the statements of Mrs. Bryan on her deposition, statements made by Mr. Sloan and John S. Bryan to the effect that she had never conferred authority upon them amounted merely to their conclusions, and there was no real conflict of evidence. The finding is conclusive.

[5] Apart from the determination of agency existent at the time the account was rendered, it is contended that at the time of the employment of the architects by Jesse Bryan and Sloan to prepare the first set of plans, the plaintiff failed to show either an actual agency or an omission or action on the part of Mrs. Bryan which could have generated a belief in the minds of the architects at that time on the subject of agency; hence, that no ostensible agency was shown. Many cases are cited upon these elementary principles of agency. In regard to these authorities, as in fact all other authorities and statements of law made on behalf of the appellant, on the oral argument the attorneys for the respondent conceded that the law was as stated and the authorities supported the statements of law. The learned counsel for the appellants has overlooked the rules of law under which a principal may be bound, even though at the time a third party deals with another there was no agency. The person sought to be charged by accepting the fruits of the dealings may be held as principal upon the theory of ratification. Further, the rule is too well established to require citation of authority that where one deals with another believing him to be the principal, on subsequently learning that he was dealing with an agent of an undisclosed principal, he may recover either from the person with whom he dealt or from the undisclosed principal. In

this case Jesse Bryan discussed the matter of the building project with his mother. He attended to her affairs. He and Sloan ordered the first set of plans, which was used as the basis of the second set of plans ordered by Sloan and John S. Bryan, on which the building was erected. Sloan had entire charge of it. Mrs. Bryan had the benefit of the work. As is so strongly urged on behalf of the appellant, the suit here is upon the implied contract of the account stated. The sole question was whether, in view of the dealings prior to sending the account, Mrs. Bryan should be held by the implied contract of the account stated. There was evidence to support the finding of the lower court upon which the question was resolved against the appellants.

[6] On behalf of the appellants it is argued that reliance upon the account stated amounts to a fraud upon Mrs. Bryan. This claim of fraud is not pleaded. It is based upon the definition of actual fraud as a suggestion of a fact which is not true by one who does not believe it to be true. It is argued that since the architects rendered a bill, which counsel for the appellants says was not warranted, it was a suggestion of an untrue fact. To follow the further argument of counsel for the appellants upon this proposition, it would be necessary to assume that when the architects rendered their bill addressed to Mrs. Bryan in the care of Mr. Sloan, who had paid all other bills, they anticipated that he would fail to inform his principal of the receipt of the bill. The knowledge of the agent is imputed to the principal. The fact that Mr. Sloan testified he had never communicated with Mrs. Bryan in regard to the account cannot change the rule of law imputing his knowledge to Mrs. Bryan. Neither can it affect the rule that an account stated is implied from failure to make timely objection to an account based upon antecedent dealings.

It is claimed the legal principle of ratification cannot be invoked in aid of the respondent, and appellants rely upon section 2334 of the Civil Code to the effect that the principal is bound by the acts of his agent under a merely ostensible authority to those persons only who have in good faith and without want of ordinary care incurred a liability or parted with value upon the faith thereof. In this suit the plaintiff sought to recover only by reason of the rendition of the account and its retention without objections. At the time

of the rendition of the account there was no question of ostensible agency. Sloan was the agent of Mrs. Bryan. There were antecedent dealings of which she accepted the benefits. Sloan, her agent, knew all about them. The evidence fully sustains the findings. It is contended that the motion for nonsuit should have been granted. The grounds of the motion were substantially those which have already been discussed on which the appellants rely to show the evidence did not sustain the findings. The lower court held there was sufficient evidence at the time of the motion to require the defendants to proceed. The motion for nonsuit was properly denied. It was coupled with an order denying motion to strike out substantially all the evidence introduced on behalf of the plaintiff. The contentions in regard to striking out the evidence and on objections to its admission were on the same grounds as those in support of the argument that the findings were not sustained. The motion was general in terms, as were the objections to the evidence. There was no error in denying the motion to strike out and none in the admission of evidence.

The judgment is affirmed.

Langdon, P. J., and Haven, J., concurred.