MAYES COUNTY MILK PRODUCERS ASSOCIATION, Inc., a Corporation, and O. J. Miller, Plaintiffs in Error,

v.

Clyde HUNTER and John Cordell, co-partners, d/b/a Hunter Agency, Defendants in Error.

No. 37565.

Supreme Court of Oklahoma.

Oct. 22, 1957.

Wilkerson & Wilkerson, Pryor, for plaintiffs in error.

Ernest R. Brown, Pryor, for defendants tiffs in error.

## BLACKBIRD, Justice.

In the trial court, defendants in error obtained a verdict and judgment as plaintiffs, against plaintiffs in error, as defendants, for the sum of $637.32, as the balance allegedly due said plaintiffs by said defendants for insurance furnished defendants through plaintiffs' insurance agency. After the overruling of defendants' motion for a new trial, they perfected the present appeal. Where not otherwise referred to, our continued reference to the parties will be by their trial court designations.

The case was tried as if the above-named balance arose out of an account stated. It was plaintiffs' theory that defendants became bound to pay them said sum, after Clyde Hunter, one of the co-partners in the plaintiff insurance agency, sent the defendant, O. J. Miller, President and Manager of the defendant Milk Producers Association, a letter dated October 15, 1954, requesting payment of several amounts totalling that sum, and itemized as premiums due on various policies of insurance the Association had assertedly been carrying through plaintiffs' agency, plus one item of more than $200 billed as deposit for the renewal of The Standard Insurance Company's Workmen's Compensation & Employer's liability policy No. C5529, which item, due to said policy's cancellation, was later deducted from the first total submitted. It was plaintiffs' theory that after they had rendered said statement of the account, defendants, by their conduct, including their failure to protest the other premiums therein represented as due and delinquent, in effect, accepted as correct, and agreed to pay, their total, as the correct balance due on said account.

Plaintiffs' witness, Clyde Hunter, testified that on a certain occasion, not long after the letter was written, "approximately" October 20th, in a conversation at the Producers Association's office, Mr. Miller told the witness and his partner, Mr. Cordell, to cancel the workmen's compensation policy; apprised them of the fact that the Association "had a lot of uncollected accounts and he couldn't pay us"; and immediately followed this with the statement that "he would call and try to work out a settlement." Evidence was also introduced to show that before, as well as after, said occasion, plaintiffs mailed the defendant Association more than one monthly statement of each policy premium

making up the total sued for, and that, on December 1, 1954, they mailed it a statement reflecting the balance of $637.32, due them (after deduction of the deposit formerly claimed for the cancelled policy) all without protest, or any claim being made by defendants that said amount did not represent the proper total, or correct balance, due on said account.

On behalf of the defendants, Mr. Miller admitted receiving the aforesaid December, 1954, statement, but denied receiving any statements before that one, and specifically denied he ever received the afore-described letter of October 15, 1954.

The largest item of the account was the premium on the aforesaid workmen's compensation policy for the period, September 14, 1953, to September 14, 1954, which said policy was introduced as Defendants' Exhibit 7, and which Mr. Miller testified that he, as Manager of the defendant Association, received through the mail "around the 14th day of September, 1953." Inclosed in the same envelope with the policy, and introduced as Defendants' Exhibit 9, was a card entitled "Employer's Acceptance", which (according to a mimeographed "Notice To Agent", also inclosed in the same envelope with the policy and introduced as Defendants' Exhibit 10, together with a note from plaintiffs' office introduced as Exhibit 8) was to be signed for the Association, as employer, and returned by it to plaintiffs' office for forwarding to, and filing with, The State Industrial Commission to show its workmen's compensation coverage. Mr. Miller testified that when he received this policy, and the other inclosures, he took no action thereon, did not sign, nor return, the acceptance card, and never claimed any insurance protection under said policy. In refutation of the latter, plaintiffs introduced as their Exhibit No. 10, an "Employer's First Report of Injury", executed on behalf of the Producers Association by its Secretary-Treasurer under date of January 26, 1954. Although Mr. Miller denied that he had had the October, 1954, conversation with plaintiffs (that Hunter testified about) and further testified that the first time plaintiffs had ever talked to him personally about the matter was "around December 10th, 1954", when, according to him, "they wanted me to pay for the insurance and I said I didn't have any insurance"—in other portions of his testimony, Miller first stated that he asked plaintiffs to cancel his insurance "around the first part of 1953", but later, on cross-examination, testified that defendants had "paid up" the insurance they carried with plaintiffs "till 1953, *September 14, 1953*." (Emphasis ours.)

In argument under their Second Proposition, defendants call our attention to the fact that an "account stated", as usually defined, contemplates that the parties to the account have had "previous transactions", and they charge that, in this case, the evidence fails to show they were ever indebted to plaintiffs on any account. They rely particularly on the fact that the evidence fails to show that any specific policy of insurance was ever delivered to them by plaintiffs. However, in view of Mr. Miller's last above-cited testimony and other evidence tending to show "previous (insurance) transactions" between the parties, and the further fact, that in an action on account stated, the agreed balance constitutes a new cause of action and renders unnecessary proof of an original obligation, or promise, of payment by the defendants, if at the time there appears to have been an indebtedness between the parties (Gladys Belle Oil Co. v. Clark, 147 Okl. 211, 296 P. 461, 465; Duerr v. Sloan, 40 Cal.App. 653, 181 P. 407; 1 Am.Jur., "Accounts and Accounting", secs. 16, 26, 27, Note 13) we think the proof, defendants refer to, was unnecessary.

Also, in view of the fact that the evidence, including Defendants' Exhibit No. 8, supra, tends to show that plaintiffs were the local agents of the insurance companies issuing the policies involved, and, according to some of Miller's testimony, defendants had recognized them as such, we find no merit in defendants' additional argument that proof of plaintiffs' entitlement to col-

lect, or sue, for the premiums on said policies, was incomplete and insufficient, without evidence that claims for said premiums had been assigned to them by the insuror companies.

Nor can we uphold defendants' further argument with reference to the insufficiency of the evidence to establish an account stated. They claim that the above-mentioned letter of October 15, 1954, was insufficient as a basis for an account stated, because the total balance shown therein to be due plaintiffs was $856.82, rather than the $637.32 sued for. We think this discrepancy was sufficiently explained and accounted for by proof of the reduction of the larger balance to the smaller one, upon cancellation of the renewal workmen's compensation policy aforesaid as defendants requested.

Defendants also argue that the monthly statements, some of which plaintiffs introduced in evidence and attempted to show were mailed to defendants both before, and after, the letter of October 15th, and before the final statement of December 10th (both in 1954) "could not amount to an account stated." However, that is not the reason those "invoices", or statements, were introduced. Plaintiffs stood not on them, but on the letter of October 15th, as their rendition of the account; and the principle issue, to which introduction of the statements pertained, was defendants' acquiescence in, or implied assent to, plaintiffs' claim. These statements showed the number of times defendants were billed for the amounts claimed in the letter, without any protest or objection as to their correctness. In Hatten v. Interocean Oil Co., 182 Okl. 727, 78 P.2d 392, 393, 116 A.L.R. 727, we held:

"Where an account is rendered by one person to another and the person receiving same retains it beyond a reasonable time without objection, this fact, if unexplained, establishes an assent to the correctness of the account and establishes an account stated. * * *"

As stated in 1 Am.Jur., supra, sec. 25: "The rule rests upon the principle that the silence of the receiver of the account warrants the inference of an admission of its correctness, the strength of the inference being governed by the particular circumstances of the case." See, also, sec. 28 of the same Work, and 1 C.J.S., Account Stated §§ 30b, 40b. In view of such proof of defendants' failure to object to the account as stated by plaintiffs, and the principle that their agreement could be implied from their silence and failure to object, it was no obstacle to plaintiffs' recovery that there was no proof of any express approval of, or promise by defendants to pay, the account. See Duerr v. Sloan and other authorities, supra. After carefully examining the evidence, we think it sufficiently showed that statements of the insurance account involved were actually mailed to defendants over such period of time as to join issue on both the question of defendants' receipt of them as against Mr. Miller's testimony denying their receipt (20 Am.Jur., "Evidence", sec. 196 et seq., and cases cited in the Note, Ann.Cas. 1917E, 1058, 1062; compare Davis v. Fromme, 23 App.Div. 498, 48 N.Y.S. 474, cited in United Hardware-Furniture Co. v. Blue, 59 Fla. 419, 56 So. 364, 35 L.R.A., N.S., 1038, 1046) and on the question of whether defendants retained them such time, without objection, as to warrant the inference, or conclusion, that they assented to the correctness of the balance plaintiffs were claiming, as to create issues for determination by the jury. See Pritchett v. Young, 188 Okl. 275, 108 P.2d 135; Lamont Mercantile Co. v. Piburn, 51 Okl. 618, 152 P. 112; 1 Am.Jur., supra, sec. 15; 1 C. J.S. Account Stated § 65, supra. We therefore hold that the trial court committed no error in denying defendants' request for a directed verdict.

Under their First Proposition defendants argue that plaintiffs' pleadings alleged a cause of action on an open account, rather than upon account stated; and they make the particular charge that the trial court committed reversible error "in per-

mitting * * * (them) to pursue a judgment on account stated after" they had declared upon an open account. They say it was such error both for the court to permit evidence offered to prove an account stated to go to the jury "in the light of the pleadings" and for it to instruct the jury on that theory. We agree with defendants' counsel that the allegations of plaintiffs' petition did not disclose that their cause of action was account stated, but defendants filed no pleading challenging the petition's sufficiency, and we observe that, in his opening statement, plaintiffs' counsel made it clear that an account stated was the basis of the action, and before, or at the time, plaintiffs commenced putting on their proof, defendants made no general objection to the introduction of any evidence pertaining to such a cause of action, nor did they, after all such evidence had been introduced, move that it be stricken. We also observe, as defendants' brief indicates (without specifically setting forth their particular objections, or the evidence to which they pertained) that their counsel did make frequent objections to plaintiffs' introduction of certain evidence germain to that theory. We also observe, however, that defendants introduced evidence to join issue on that theory; and it does not appear from the record, nor do they attempt to demonstrate in their briefs, that there was any element of surprise or prejudice in such conduct of the trial. We are therefore of the opinion that this is a proper case for regarding, on appeal, plaintiffs' pleadings as having been amended to conform to the proof. See Mead v. Mead, Okl., 301 P.2d 691, 695, and the authorities therein referred to; Ada-Konawa Bridge Co. v. Cargo, 163 Okl. 122, 21 P.2d 1.

■ Defendants next argue that the trial court's statement, prefatory to its numbered Instructions, that the action was brought on an account stated, had the effect of leading the jury to believe that plaintiffs had proved such a cause of action and that, under the evidence, there was no doubt as to its existence. We do not so interpret said statement, and there is nothing to demonstrate that the jury did. It is the court's prerogative to instruct the jury as to the nature of any case being submitted to them, and its duty to properly instruct upon the issues therein joined. Thomas v. State ex rel. Com'rs of Land Office, 197 Okl. 450, 172 P.2d 973. Here, in view of the evidence they introduced, there can be no question but that the cause of action, if any, plaintiffs were maintaining, was "account stated"; and it was not error for the court to so apprise the jury, even, assuming without deciding, that their petition might have been more appropriate in an action on an open account.

■ Defense counsel also say that the court's Instruction No. 3 was indefinite, uncertain, and ambiguous; but the only clue they give as to why they so consider it, is their statement that their Requested Instruction No. 2 "more nearly presents correctly the matter which was attempted to be presented * * *". The principal, and most readily apparent, difference between the "Requested" Instruction and the "given" instruction, is that the former sets forth as one of the prerequisites of recovery in an action on account stated, a promise by the defendant to pay an agreed balance. The "given" instruction authorized the inference, or finding, of an implied promise on defendants' part, from their failure to protest the stated balance of the account for an unreasonable length of time after its rendition. As will be seen from the authorities cited, supra, no express promise on the part of defendants was necessary; and the trial court properly gave its Instruction No. 3 in preference to defendants' Requested Instruction No. 2.

As we have concluded that the various arguments advanced by defendants show no cause for reversal, the judgment of the trial court is hereby affirmed.

CORN, V. C. J., and DAVISON, WILLIAMS, JACKSON and CARLILE, JJ. concur.