YELLOWSTONE LIVESTOCK COMMISSION, Appellant, v. LOUIS H. DUPUIS, Respondent.

No. 9499.

Submitted November 20, 1957. Decided May 15, 1958.

325 Pac. (2d) 691.

Leif Erickson, Helena, Sanders & Cresap, Sidney, for appellant.

Wayne K. Cumming, Brattin & Habedank, Sidney, Lawrence H. Watson, Bismarck, N. D., for respondent.

MR. CHIEF JUSTICE HARRISON:

Defendant is a livestock buyer. On June 4, 1952, he was present at an auction sale conducted by the plaintiff, in its livestock commission sales yard, at Sidney, Montana. The auction sale commenced in the morning and the defendant bid upon cattle offered for sale from time to time until somewhere between 11:30 and 12:00 noon, at which time Chris Hanson, vice president of the corporation, having observed the purchases of the defendant and being concerned as to payment for the number of cattle being bid in by him spoke to defendant and asked how he was going to pay for the cattle. Defendant told him he was going to draw a draft. Defendant then proceeded into the

business office of the plaintiff. There he talked with Morris Herrick, office manager of the plaintiff. Herrick inquired of defendant the method he planned on using to pay for the stock he was purchasing and defendant replied that he was buying them for the Drovers Stock Company and would draw a draft upon that company. Herrick then advised defendant that they would want to know if such a draft would be paid, so a telephone call was made to the Drovers Stock Company in St. Paul. Both defendant and Herrick talked to the representative of that company, the gist of the conversation being that defendant advised the Drovers people that he was buying cattle and wished to draw a draft and wanted to know if they would honor a draft for the cattle. The representative of the company advised that if the cattle were as represented the Drovers Stock Company would pay the draft. Both defendant and Herrick testified that in answer to the inquiry with regard to the transaction, the representative of the Drover Stock Company replied: "Of course, it is all right. Louie knows what to do."

At some time later that day, there was another conversation between the defendant and the Drovers Stock Company wherein he received instructions from them as to the shipment of the cattle purchased. The results of the telephone conversations apparently were satisfactory to the officers of the plaintiff, because they accepted the draft signed Drovers Stock Company, by Louis H. Dupuis. The cattle were billed out, consigned by the Drovers Stock Company over the railroad from Sidney to two points in Iowa, with a stopover at South St. Paul and consigned to the Drovers Stock Company. The stock were loaded and shipped. In addition the plaintiff drew a check to the defendant for $225 representing his commission upon the cattle purchased, bearing the notation: "Commission—Drovers."

Three or four days thereafter plaintiff received notice, by way of a telegram to their bank in which the draft had been deposited, that it had been refused by the Drovers Stock Company. Chris Hanson was then in the vicinity of St. Paul and he

was contacted by the plaintiff following receipt of advice that the draft had not been honored. He was also contacted by the Drovers Stock Company which resulted in plaintiff giving to the Drovers Stock Company a full and complete release, so that plaintiff could obtain possession of the cattle. The plaintiff thereupon sold the cattle for its own account, resulting in a loss of $2,789.78, to recover which amount this action was brought against the defendant.

One of the items included in the gross sales price by the plaintiff was the sum of $225 being the commission paid to the defendant, but this was paid by check and payment stopped, so upon the trial plaintiff requested permission to amend the complaint to reduce the amount sued for, resulting in a corrected loss figure of $2,564.78. There is testimony in the record to the effect that the cattle market suffered a break a few days after the auction sale.

The jury returned a verdict in favor of defendant. From the judgment entered on the verdict plaintiff appeals, contending that the verdict is against the law as laid down in the court's instructions. Defendant cross-appeals, assigning as error the refusal of the court to instruct the jury that in the event of a verdict for the defendant, by reason of the attachment bond filed herein, defendant would be entitled to recover his expenses of defending the action, plus a reasonable attorney's fee.

Plaintiff's contentions here are that an agent is personally liable under a contract entered into by him for an undisclosed principal; that where one deals with another believing him to be the principal and thereafter learns that he is dealing with an agent of an undisclosed principal, he may recover from either, Duerr v. Sloan, 40 Cal. App. 653, 181 Pac. 407; that it is incumbent upon an agent if he would escape personal liability to disclose his agency and that if he does not do so it may be presumed that he intended to make himself personally liable, Harmon v. Parker, 193 Mich. 542, 160 N. W. 380; that if an agent incurs a personal liability and thereafter discloses his principal,

a third party has a right to elect, as between the agent and principal, whom he will hold responsible, Duerr v. Sloan, supra. Plaintiff further contends that no election required by a third party until such time as he has full knowledge of all the facts and an opportunity to make a deliberate and intelligent choice, Lindquist v. Dickson, 98 Minn. 369, 107 N. W. 958, 6 L. R. A., N. S. 729.

With these general principles of law we find no fault. However, we do differ with plaintiff in regard to their application under the facts in this case.

Plaintiff contended that defendant did not disclose his agency until the time he made arrangements for payment for the cattle which he had bid in at the auction sale and that at such time the contract was complete and liabilities incurred thereunder. There is no question but what defendant bid in the cattle, and if the transaction stopped there we would concede the position of the plaintiff is correct, but the plaintiff was concerned about the ability of the defendant to pay for the cattle and upon inquiry was advised that they were to be paid for by draft. The plaintiff then desired assurance that the draft would be paid and the telephone conversations followed. It is apparent from these actions at a time when the cattle were still in the possession of the plaintiff that it wanted to be assured of payment before delivery would be made. While this set of facts might not alone be sufficient to sustain an election by the plaintiff to accept the then disclosed principal in the place and stead of the agent, the plaintiff went further and issued its check to the defendant for his commission in purchasing the cattle for the principal; and it billed the cattle for shipment on the railroad from Sidney, Montana, to two points of destination in the State of Iowa, showing the Drovers Stock Company as the shipper-consignor, and the Drovers Stock Company as the consignee. When notified that the draft had been refused it executed a full and complete release to the Drovers Stock Company, repossessed

the cattle and sold them in the open market for their own· account. ·

R. C. M. 1947, sec. 2-212, provides: "One who assumes to act as an agent is responsible to third persons as a principal for his acts in the course of his agency, in any of the following cases, and in no other:

"1. When, with his consent, credit is given to him personally in a transaction; ·

"2. When he enters into a written contract in the name of his principal, without believing, in good faith, that he has authority to do so; or,

"3. When his acts are wrongful in their nature."

While plaintiff contends that it extended credit to defendant ▇▇ in that he bid the cattle in at the auction, yet the facts disclose that they were not satisfied with his credit but questioned it, and only after assuring themselves that someone other than defendant was to be liable for the purchase price was the transaction completed. The acceptance of the bid by the auctioneer constituted an executory contract of sale, but execution thereof required payment of the purchase price. 5 Am. Jur., Auctions, sec. 41, p. 474. Plaintiff did not rely upon the defendant to complete this executory contract of sale as a principal, but upon disclosure of the agency accepted completion of the contract of sale by the Drovers Stock Company. What was said by this court in Farr v. Stein, 54 Mont. 529, 172 Pac. 135, 136, is appropriate here: "Obviously, the assumption by one to act as agent for another must of necessity require this fact to be declared by him in appropriate terms, as well as the name of the principal for whom he is acting. Obviously, also, when the evidence of what was said and done at the time of the particular transaction, in the light of the attendant circumstances, is equivocal and furnishes the basis for different inferences as to what the intention of the parties was, the question whether defendant acted for himself is for determination by a jury."

In this cause the jury were instructed on the law by the

■ court, heard the evidence and found adversely to the plaintiff. There was ample evidence to support their verdict.

Turning now to the cross-assignment of error raised by the ■ defendant. Section 93-4304, R. C. M. 1947, in part provides:

"The condition of such undertaking shall be to the effect *that if the defendant recover judgment, or if the court shall finally decide that the plaintiff was not entitled to an attachment,* the plaintiff will pay all costs that may be awarded to the defendant, and all damages he may sustain by reason of the issuing out of the attachment, not exceeding the sum specified in the undertaking." (Emphasis supplied.)

Defendant admits that it has been the universal practice to bring a separate action under an attachment bond for such damages as are sustained by the aggrieved party, but contends there is nothing in the statute which would prohibit it being done in the attachment action proper. We believe that the wording of the statute itself supplies the answer. When does a "defendant recover judgment," or when does the court "finally decide that the plaintiff was not entitled to an attachment." In our view, only when such a judgment is made, entered and filed; only then does a cause of action accrue under the terms of the statute. For this reason the court was correct in refusing the offered instruction.

The judgment is affirmed.

MR. JUSTICES CASTLES, ADAIR and ANGSTMAN, and HONORABLE ROBERT J. NELSON, District Judge, sitting in place of MR. JUSTICE BOTTOMLY, concur.