Russ BULLOCK and June Mundy Bullock, Plaintiffs and Appellants,

v.

JOE BAILEY AUCTION COMPANY et al., Defendants and Respondents.

JOE BAILEY AUCTION CO., Third-Party Plaintiff and Respondent,

v.

WESTERN SURETY COMPANY, Third-Party Defendant and Appellant.

No. 14845.

Supreme Court of Utah.

May 22, 1978.

Frank A. Allen and Michael D. Hughes of Allen, Thompson, Hughes & Behle, St. George, for plaintiffs and appellants.

Phillip L. Foremaster, St. George, for defendants and respondents.

HALL, Justice:

Plaintiffs Russ Bullock and June Mundy Bullock (Bullock) initiated these proceedings seeking to obtain specific performance of a contract of sale of well drilling equipment and to restrain defendant Joe Bailey Auction Company (Bailey) from reclaiming said equipment. Bailey counterclaimed seeking damages for issuance of a wrongful restraining order and filed a third-party complaint against Western Surety Company (Western) as surety. The trial court dissolved the restraining order, dismissed the complaint and awarded damages on the counterclaim, and from the judgment entered Bullock and Western appeal.

The equipment involved was consigned to Bailey for sale at auction at Ventura, California, on December 15, 1972. On the morning of the auction Bullock met with Parkes Shewmake, an auction official and representative of Bailey, for the purpose of qualifying as a bidder. Shewmake required verification of financing before he would permit bullock to bid and subsequently, after the bidding had commenced, he received the necessary verification by telephone. Thereafter, Shewmake did the actual bidding for Bullock and was successful on the desired equipment. It was not in operable condition so was left on the auction site which was controlled by others involved in the auction.

Bailey denies that Bullock had permission to remove the equipment from the auction site, but in any event, Bullock performed extensive repairs and removed the equipment to Utah without protest from Shewmake or the other parties in charge of the site, although they were aware of Bullock's activities.

Bullock's financing was delayed, and while the equipment was being moved to Utah, Bullock gave Shewmake a check which bore the following language on the reverse side: "Not to be presented to the bank for collection until adequate financing is completed." A few days later Bailey attempted to negotiate the check to no avail. He thereafter made it known that he intended to reclaim the equipment and Bullock sought and obtained the restraining order which was subsequently dissolved by the court when it found that payment had not been made and when Bullock failed to appear for the hearing scheduled thereon.

It was Bailey's contention at trial that payment was a condition precedent to any sale, that payment was not made, hence there was no sale, and title did not pass. On the other hand, Bullock contended that acceptance of his bid by the auctioneer gave rise to an executory contract of sale and that the transaction was thereafter governed by the applicable provisions of the Uniform Commercial Code.[1]

The trial judge determined, and specifically set forth in his findings, that payment was a condition precedent to the *consummation* of the sale and that Bullock failed to meet the terms and conditions of the auction sale by failing to pay. He further determined that Bullock took possession of the equipment without permission, that his retention of the equipment was without basis of ownership or right of possession, there being no proper sale *consummated,* and that said retention pursuant to the restraining order was improper. He thereupon entered judgment awarding damages for the issuance of the wrongful restraining order, loss of auction commission, and costs of resale of the equipment.

Bullock maintains that the foregoing findings are wholly consistent with his contention that a contract of sale was formed by the parties and the focal point of his appeal is that, having found a contract to exist, the trial court thereafter erred in failing to apply the law of sales in accordance with the Uniform Commercial Code[2] which would have precluded any award of damages in favor of Bailey.

The findings of the trial judge, couched as they are in terms of "consummation of the sale" and "sale consummated," do in fact lend some credence to Bullock's argument. This is borne out by simply looking to the definitions of his choice of terminology. "Consummation" is defined as the completion of a thing,[3] and its common application is to sales, contracts and marriages. "To consummate" is to complete, as distinguished from initiating.[4] In order to consummate something, that "something" must of course already be in existence.

The trial judge's improvident use of the equivocal language hereinabove referred to may very well signify the quandary he

1. U.C.A., 1953, 70A–2–101, et seq.

2. Ibid.

3. Black's Law Dictionary, Revised Fourth Edition, 1968.

4. Ibid.

faced, but when we look to the *whole* of his findings, conclusions and judgment, we are not convinced that he did other than to determine that no contract of sale ever came into existence. Had he in fact found that a sale was made, his subsequent findings as to right of possession, damages, etc. would have been totally without support and would have made no sense.

The question thus presented for our determination is whether or not there is credible evidence in the record to support the trial court's finding that a contract of sale was not made. If there is no such evidence present, the judgment must be reversed.[5]

█ It is to be noted at the outset that conflict of laws questions may be inherent in the facts of this case, however, no such issue was presented at trial, hence we will not address it here for the first time.[6] Consequently, we are constrained to view the relative merits of this appeal in accordance with applicable Utah law only.

█ A careful examination of the evidence produced at trial reveals that the facts clearly support a sale contrary to the findings of the trial court.

█ To begin with, the parties stipulated at the outset of the trial that the equipment was "struck off" at auction to Bullock. Such being the case, the sale by auction was complete as a matter of law at the fall of the hammer.[7]

The fact that an executory contract of sale was formed by the parties is also evident by the testimony of Bailey elicited on cross-examination as follows:

Q. Could it [the equipment] have been lost subsequent to the sale when it was being—when these items were being stored under a paid guard of Joe Bailey Auction?

A. It could have been, but it is still the responsibility of the buyer, that is auction procedure all over the country.

Q. Isn't it the responsibility of the buyer once the sale has been accepted?

A. When the buyer—for your information, *when a bid is accepted it is accepted. When an auctioneer says sold* by the buyer, he is responsible for it, for its well-being, its keeping from then and thereon.

Q. Haven't you testified that the *purchase* of the articles by the plaintiffs *was accomplished* pursuant to the terms of the auction?

A. *Except* it wasn't paid for.

Q. *So that day subsequent, did you tell the buyer plaintiffs in this cause of action that it was their responsibility to protect the equipment?*

A. *They were told that there the day of the sale.* [Emphasis added.]

In regard to the matter of Bullock's possession of the equipment, Bailey's foregoing testimony placed the responsibility for the purchase upon the buyer, and despite his denial that Bullock removed the equipment without his specific permission, Bailey is nonetheless bound by the acts of his agents in charge of the sale site, and specifically those of Parkes Shewmake, who permitted Bullock to perform costly major repairs and remove the equipment to Utah. This evidence was uncontroverted.

The fact that Bailey's agent, Parkes Shewmake, accepted Bullock's check in payment after the equipment had been taken into possession by Bullock and removed to Utah, is also compelling evidence of a sale and delivery.

█ With respect to the propriety of the restraining order, although Bullock's right to possession is challenged, he in fact came into possession peacefully, and Bailey was threatening to resort to self-help in order to reclaim the equipment rather than seek his legal remedy for payment through appro-

5. *Hathaway v. United Tintic Mines Co.,* 42 Utah 520, 132 P.2d 388 (1913).

6. *Hanover Ltd. v. Fields,* Utah, 568 P.2d 751 (1977); *Wagner v. Olsen,* 25 Utah 2d 366, 482 P.2d 702 (1971).

7. U.C.A., 1953, 70A–2–328(2) provides a sale by auction is complete when the auctioneer so announces by the fall of the hammer or in other customary manner; See also, *State v. Clinger,* 72 Idaho 222, 238 P.2d 1145 (1951).

priate legal proceedings. Thus it is seen, contrary to the trial court's finding, that Bullock did have a valid possessory right as buyer and was entitled to the protection of the restraining order.

 In regard to the matter of damages incidental to resale, Bailey had no right to pursue such a remedy because delivery of the equipment had been made,[8] he had not retained any security interest, nor had he any right to repossess by means of self-help. His obvious remedies were either to make *demand* for reclamation [9] or sue for breach of contract. In any event, now that he has been successful in reclaiming the equipment, he is excluded from all other remedies; [10] hence, the award of damages was in error.

Reversed. Costs to Bullock and Western.

MAUGHAN and WILKINS, JJ., concur.

CROCKETT, Justice (dissenting):

I dissent for the following reasons.

In reversing the trial court's determination that no sale has been made, it seems to me that the main opinion departs from fundamental and important rules of review. The findings of the trial court are entitled to a presumption of correctness.[1] We should assume that it believed those aspects of the evidence which support its findings; [2] and its refusal to find that a sale had been completed should be sustained unless the evidence was sufficient to *compel* such a finding.[3]

Pivotal findings of fact made by the trial court, which find support in the evidence, are:

(1) That in connection with auctioning of the equipment in question the defendant announced that payment for any purchases made was a condition precedent to the consummation of any sale;

(2) that the plaintiffs failed to meet that condition of the auction and were instructed that no sale had been consummated until the purchase price of the equipment for which they had bid was paid in full; and

(3) that the plaintiffs were instructed they could not remove the equipment from its place of storage, but that they did so without permission of the defendant.

The main opinion states the proposition that a sale at auction is complete at "the fall of the hammer," apparently placing some reliance on U.C.A.1953, Section 70A–2–328. I do not see that section as mandating any such conclusion. There is no magic to the "fall of a hammer." Whatever else the Uniform Commercial Code may do to our law, it does not repeal the fundamental concept, honored since ancient times, that in order to bind parties to a contract there must be a meeting of their minds in agreement thereon.[4] It is undoubtedly true as indicated in the cases cited, that under appropriate circumstances where the auctioneer offers, and the bidder accepts, the fall of the hammer may indicate such an agreement and the sale be consummated. But there are obviously numerous circumstances where that would not be the result, including where the auctioneer misinterpreted a gesture as a bid, and banged his hammer; or where a bidder proves to be totally irresponsible.

The trial court could justifiably find and conclude as it did that there was a previously announced condition: that there would be no sale until payment was made, and

---

8. See U.C.A., 1953, 70A–2–703 and 710 which sets forth varied remedies of seller *on or before* delivery; similarly interpreted in *Stumbo v. Paul B. Hult Lumber Co.,* 251 Or. 20, 444 P.2d 564 (1968).

9. U.C.A., 1953, 70A–2–702(2).

10. U.C.A., 1953, 70A–2–702(3).

1. *C. G. Horman Co. v. Lloyd,* 28 Utah 2d 112, 499 P.2d 124 (1972).

2. *Robertson v. Hutchinson,* Utah, 560 P.2d 1110 (1977).

3. *Walker Bank & Trust Co., etc. v. First Security Corp.,* 9 Utah 2d 215, 341 P.2d 944 (1959).

4. See Williston on Contracts, 3rd ed., Section 1, also suggests that "mutual assent" is more accurate, citing numerous cases.

that the defendant's indication of acceptance of the plaintiff's bid constituted but an executory contract which required payment of the purchase price before the sale was complete.[5] Consequently neither title to, nor the right of possession of, the equipment passed to plaintiff until he made such payment.[6]

Regarding the right to possession of the equipment, the main opinion states that the defendant's agent, Parkes Shewmake, permitted the plaintiff to perform major repairs on the equipment and move it to Utah. It is significant that Mr. Shewmake had been authorized to act for the plaintiff Bullock in this transaction, and also for the defendant Bailey. However, there is no evidence that the latter authorized Shewmake to permit plaintiff to make the repairs and remove the equipment. The important and what should be controlling proposition is the trial court's finding that the plaintiffs were instructed that they could not remove the equipment until it was paid for and that they disregarded that instruction.

Finally, it is urged on plaintiffs' behalf that Shewmake's acceptance of the check from the plaintiffs, after the equipment was removed, constitutes substantial evidence that there had been a sale and delivery. In support of the trial court's refusal to find that there had been any such sale, the fact is that the check was inscribed on the back:

"Not to be presented to the bank for collection until adequate financing is completed."

The check was not honored when the defendant attempted to cash it a few days later because no "adequate financing" had been obtained.

It is my opinion that the trial court's refusal to find that the presentation of that valueless check fulfilled the condition of payment and resulted in a sale should be sustained.

I would affirm the judgment.

ELLETT, C. J., concurs in the views expressed in the dissenting opinion of CROCKETT, J.

---

**5.** See *Yellowstone Livestock Commission v. Dupuis,* 133 Mont. 454, 325 P.2d 691 (1958).

**6.** 7 Am.Jur.2d, Auctions and Auctioneers, Section 48.