# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

POWELL AND OTHERS V. J. Q. ADAMS.

January 19, 1942.

Record No. 2448.

Present, All the Justices.

The opinion states the case.

*S. P. Powell* and *D. V. M. Powell,* for the plaintiffs in error.

*George Mason, Jr.,* for the defendant in error.

HUDGINS, J., delivered the opinion of the court.

George Brown and wife, on the 23rd day of December, 1924, conveyed certain real estate to S. P. Powell and M. J. Powell, trustees, to secure the payment of $200, evidenced by a note bearing even date with the deed of trust and signed and endorsed by George Brown. Default was made in the payment of the note, and at the request of the noteholder, the trustees duly advertised the property for sale on October 4, 1937. At this sale the property was cried out to J. Q. Adams for the sum of $430.

For some reason payment of the purchase price was not made on the date of sale. Later the trustees wrote numerous letters to the purchaser, demanding payment of the purchase money and offering to convey the property sold. J. Q. Adams failed to answer any of the communications sent him or to pay the purchase price. On August 10, 1940, the trustees and the noteholder instituted this action by notice of motion against J. Q. Adams to recover the sum of $430, with interest from the date of sale, and tendered a deed signed and acknowledged by the trustees. The defendant plead the general issue and, as required, filed his grounds of defense. The trial court, without a jury, decided the issues and entered judgment for defendant, from which judgment plaintiffs sought and obtained this writ of error.

Plaintiffs' petition raises some minor questions of procedure and the admission and exclusion of evidence which it is useless to discuss. As we view the record, the decision on the merits of the case turns upon the single question—whether or not the trustees offered to convey and were ready and willing to convey to the purchaser, upon payment of the purchase price, such property and such title as were vested in them by the deed of trust.

The circulars advertising the property for sale made specific reference to the deed from George Brown and Lovy Brown, his wife, to the trustees, and stated that it was the identical land conveyed to George Brown and Lovy Brown by deed from J. H. Carter and others. Proper references were made to the deed books and pages in which the deeds were recorded in the clerk's office of the Circuit Court of Spotsylvania county.

The description in the deed from J. H. Carter and others to George and Lovy Brown was as follows: "All that certain tract of land bounded on the north by lands of W. A. Clark, on the east by the Beazley land now owned by J. R. Chambers of Raleigh, N. C., south by said Beazley, west by Stephen P. Lane land now owned by J. S. Barnes and the remainder of the land of said J. H. Carter from which this land granted was sold off and containing twenty-five acres, to be hereafter surveyed off more accurately so as to include said twenty-five acres and the buildings, fences and improvements put thereon by said Brown and now in his possession and occupation."

The trustees tendered to the purchaser a deed bearing date on November 19, 1937, containing the usual recitals and describing the property as follows: "All that tract of land in Chancellor District, Spotsylvania county, Virginia, then occupied by them, and acquired by purchase from John H. Carter by deed of December 13, 1924, of record in deed book 98, page 363, of Spotsylvania county clerk's office, said land being described as adjoining the remaining lands of the said Carter, and J. S. Barnes (formerly Fenderson and prior thereto Stephen P. Lane land) on the west; the Beazley land on the east; lands of Wyatt Clark on the north; and the Beazley land on the south, containing twenty-five acres."

While the trustees, in the deed tendered the purchaser, did not describe the land in the identical language found in the instrument conveying the legal title with the power of sale to them, there can be no doubt that the description is sufficient to show on the face of the deed that they had sold and were offering to convey to the purchaser

the identical land—no more, no less—that had been conveyed to them. Indeed, in defendant's brief it is said: "The sequence of the description contained in the deeds from Carter, et als., to Brown, from Brown and wife to S. P. Powell and M. J. Powell as trustees, and from Powell, et als, to Adams, shows that the description contained in all the aforesaid deeds are the same, being that the twenty-five acres of land is bounded on the north by the land of W. A. Clark, on the east by the Beazley land, on the south by the Beazley land, on the west by J. S. Barnes land and the remainder of the land of the said J. H. Carter." This statement clearly shows that the trustees offered to convey and executed a deed conveying to the purchaser the land offered for sale and purchased by defendant from the trustees.

The sole ground of defendant's defense to the motion in this court is that a survey and plot, filed with plaintiffs' notice of motion, does not include the same land conveyed to the trustees. This claim is based on the fact that the land, as shown on the plot, does not bound the Beazley land on the south and east.

The deed from the trustees to the purchaser was dated, signed and acknowledged on November 19, 1937. The trustees, in an effort to get the purchaser to comply with his contract, caused a plot to be made on March 26, 1940.

The powers and duties of a trustee in a deed of trust, given to secure the payment of a debt, are limited and defined by the instrument under which he acts. He is the agent of both debtor and creditor. It is incumbent upon him to act toward each with perfect fairness and impartiality. *Preston* v. *Johnson*, 105 Va. 238, 239, 53 S. E. 1.

The trustees were not authorized by the expressed or implied powers in the deed of trust under consideration to have the land surveyed, after the date of sale, for the benefit of the purchaser. The contract of sale was consummated when the auctioneer cried the property out to the person making the highest and last bid. The only power remaining in the trustees, so far as the purchaser was concerned, was to collect the purchase money and execute a proper

deed conveying such property and title as had been conveyed to them.

■ Judge Whittle, in *Motley* v. *Hodges*, 120 Va. 498, 499, 91 S. E. 757, quoting from former Virginia cases with approval, held: " 'A purchaser of land at a public sale made by a trustee must look to the title of the grantor of the land, and he is entitled only to a deed with special warranty of title. He cannot look to the trustee for a good title, for in making the sale he is but an agent; he cannot look to the creditor, for he sells nothing, and is merely to receive the proceeds of the sale. To such a sale the principle of *caveat emptor* applies.' "

In *Sutton* v. *Sutton*, 7 Gratt. (48 Va.) 234, 56 Am. Dec. 109, it was held: "The purpose of the conveyance (deed of trust to secure a debt) was, that the property should be sold by the trustee, at all events, for whatever it would bring, and the grantor undertook no responsibility either as to title or quantity. If the quantity had turned out after the sale by the trustee to be greater than that mentioned in the deed, neither he, nor the grantor, nor the *cestuis que trust*, could have exacted from the purchaser compensation for the excess; and by parity of reason, they are not responsible for a deficiency.

"There is no principle, therefore, whether of defective title or deficient quantity, upon which the appellee is entitled to relief; * * *. Acting as trustee, he sold at public auction, such property and such title only as were vested in him by the deed, according to the terms therein prescribed, * * *."

Defendant, in his brief, concedes that the deed tendered him by the trustees conveys to him the identical land which was conveyed to George and Lovy Brown, and by them in turn conveyed to the trustees. This—no more, no less—is what he bought at the sale.

■ Whether the survey made by the trustees on the request of the purchaser is correct or incorrect is immaterial. Their action in employing a surveyor to make the survey was *ultra vires* and void. Unless the boundaries stated in the survey conform to those stated in the deed of trust, no one is

bound thereby. The grantors and the creditors are not bound, as neither authorized the trustees to act for them; the purchaser is not bound, as he bought the land within the boundaries described in the deed of trust. He could accept the deed from the trustees, repudiate the survey, and in a proper proceeding establish the boundary lines of the land conveyed to the trustees. Circumstances may arise before sale which may compel the trustees to have the land surveyed in order to obtain the best available price. However, in this case no dispute as to the boundaries arose until the case was called for trial.

It is clear from the testimony of the defendant himself that he repented of his bargain and sought various means to evade the obligation created by his contract voluntarily made. He admitted that he heard a rumor to the effect that he had acquired 10 of the 25 acres from another source, but he never communicated this rumor to the trustees. This rumor was proven false by the testimony introduced. Furthermore, he stated that he "did not now want the land under any circumstances, but might take it if the line was run to include the John H. Carter house and the George Brown house." No one claims that the John H. Carter house was included in the land sold by the trustees.

The plot, which the trustees caused to be made, was filed not with the deed but with the notice of motion, in which it was stated that the plot was accurate and that the trustees would attach it to the deed. If the purchaser was not satisfied with the plot so filed, it was his privilege to reject it. The deed, without the plot, conveyed to the purchaser such property and such title as had been conveyed to the trustees. This was what he purchased and this was tendered him.

Under the proven facts it was the duty of the trial court to eliminate from further consideration the survey of March 26, 1940, and enter judgment in behalf of the plaintiffs for the sum of $430, with six per cent interest from October 4, 1937, until paid. Upon the payment of this sum, defendant is entitled to receive from the clerk of the trial court the deed

bearing date November 19, 1937, and signed and acknowledged by the trustees.

The judgment is reversed, and the case is remanded with directions to the trial court to enter judgment in accordance with the views herein expressed.

*Reversed and remanded.*