In re COMMUNITY INVESTMENTS ASSOCIATES I, Debtor.

STANDARD FEDERAL SAVINGS AND LOAN ASSOCIATION, and Phillip G. Coble, Trustee, and George M. Temple, Trustee, and Wills Investment, Inc., Plaintiffs,

v.

COMMUNITY INVESTMENTS ASSOCIATES I, A Virginia Limited Partnership, Ethan Allen Turshen, Trustee in Bankruptcy.

and

In re COMMUNITY INVESTMENTS ASSOCIATES I, Debtor.

COMMUNITY INVESTMENTS ASSOCIATES I, A Virginia Limited Partnership, Ethan Allen Turshen, Trustee in Bankruptcy, Plaintiff,

v.

STANDARD FEDERAL SAVINGS AND LOAN ASSOCIATION, and Phillip G. Coble, Trustee, and George M. Temple, Trustee, and James A. Steele, Trustee, and Dominion Sash & Door, Inc., and Victor F. Rinaldi, Trustee, and Wills Investment, Incorporated, and Stanley Bruce Brock, Trustee, and C. Daniel Clemente, Trustee, and James R. Corbitt Company, and J. L. Matthews, Inc., and County of Fairfax, Commonwealth of Virginia, and Haines Paving Company, Inc., and Concrete Specialists, Inc., and Reston Homeowners Association, Defendants.

Bankruptcy No. 81–00385–A.
Adv. Nos. 81–0146–A, 81–0150–A.

United States Bankruptcy Court,
E. D. Virginia,
Alexandria Division.

Sept. 28, 1981.

Phillip G. Coble, Oakton, Va., trustee.

George M. Temple, Virginia Beach, Va., trustee.

Joseph E. Bankert, Alexandria, Va., and Nelson Deckelbaum, Washington, D.C., for Wills Inv., Inc., Stanley Bruce Brock, trustee and C. Daniel Clemente, trustee.

Thomas S. Kenny, Reston, Va., for Reston Homeowners Assn.

James A. Steele, Gaithersburg, Md., trustee.

Bruce Goldstein, Washington, D.C., for James R. Corbitt Co., John W. Guinee, trustee in bankruptcy for James R. Corbitt Co.

Peter A. Cerick, Herndon, Va., for Haines Paving Co., Inc.

Robert J. Test, Alexandria, Va., for J. L. Matthews, Inc.

Richard A. Golden, Asst. County Atty., Fairfax, Va., for Fairfax County, Commonwealth of Virginia.

Victor F. Rinaldi, Fairfax, Va., trustee.

Ethan Allen Turshen, Arlington, Va., trustee in bankruptcy for Community Investments Associates I.

## MEMORANDUM OPINION

MARTIN V. B. BOSTETTER, Jr., Bankruptcy Judge.

This matter, which arises from a rather unusual and interesting factual situation, is before the Court on the Complaint of Standard Federal Savings and Loan Association ("Standard Federal") and other named parties against Community Investments Associates I, a debtor-in-possession in an arrangement under Chapter 11 of the Bankruptcy Code, by its trustee, Ethan Allen Turshen, Esquire.[1] The trustee for the debtor-in-possession filed a Complaint against Standard Federal, Wills Investment, Inc. ("Wills") and other named parties to sell certain real property free and clear of liens to Reston Land Corporation.[2] Thereafter, the Court consolidated Wills' Complaint (No. 81–0146–A) with the trustee's Complaint (No. 81–0150–A) for purposes of trial on the instant matter.

The debtor-in-possession is a Virginia limited partnership. The only general partner is the James R. Corbitt Company ("Corbitt").[3] The sole limited partner is the J. L. Matthews Company. The debtor-in-possession filed a Chapter 11 proceeding, Arrangement No. 81–00385–A, on April 2, 1981 and Ethan Allen Turshen was appointed trustee on or about May 27, 1981.

The debtor-in-possession owns nine (9) lots located in Section 64A, Reston, Virginia.[4] Four (4) of these lots have partially-

---

1. On August 13, 1981, Standard Federal as well as Phillip G. Coble, Trustee, and George M. Temple, Trustee, entered a voluntary non-suit on their Complaint. The sole remaining plaintiff in the action is Wills Investment, Inc.

2. The trustee, in his Complaint, is of the opinion that the real property at issue herein is encumbered by two valid deeds of trust, dated June 29, 1979 and April 30, 1980, held by Standard Federal. The trustee took no position at trial as to the validity of two deeds of trust—

junior to those held by Standard Federal—held by Dominion Sash & Door, Inc. (dated November 19, 1980) and by Wills (dated January 14, 1981).

3. Corbitt is a debtor-in-possession in a case presently pending before this Court. John W. Guinee, Esquire, is the trustee in bankruptcy.

4. The particular lots in question are: Lots 1, 2, 3, 4, 5, 6, 12, 13 and 14, Block One, Reston.

completed residential structures. It executed numerous construction loan agreements, supported by promissory notes and secured by deeds of trust, in 1979 and 1980 with Standard Federal. The debtor-in-possession was later unable to remain current on the repayment of these loans causing Standard Federal, by its trustees, to advertise all nine lots for sale by foreclosure. Wills was the sole and high bidder (at $614,-500.00) when the auctioneer offered all nine lots together at the foreclosure sale. The sale was held on March 19, 1981.[5]

John T. Rollins, a deputy-sheriff for Prince William County, Virginia, and auctioneer at the foreclosure sale, was called as a witness by Wills. He testified that he had executed a memorandum of sale at the conclusion of the foreclosure sale, in evidence as Plaintiff's Exhibit 3, which indicated that Wills was the successful bidder. Rollins testified on cross-examination that the advertised and cried terms of the sale were as follows: cash in full at settlement with a deposit of ten percent (10%) of the sale price in cash or certified check at the time of the sale and full compliance with said terms within fifteen (15) days from the date of sale. To the best of his recollection Rollins could not recall any waiver of these terms at the sale.

Alan Hammerschlag, Vice President of Standard Federal, was called as a witness by the trustee. Hammerschlag testified that one week prior to the foreclosure sale at issue herein he spoke with P. Reed Wills, II (President of Wills Investment, Inc.) and Stanley Brock, Esquire (attorney for Wills) regarding the advancement of a construction loan by Standard Federal to Wills if the latter was the successful bidder at the foreclosure sale. Standard Federal negotiated and then signed a loan commitment to Wills on April 22, 1981. This loan commit-

ment, in evidence as Trustee's Exhibit B, by its terms, was initially set to expire on April 30, 1981 if settlement was not had by that date. The settlement date was later continued to various dates certain by the mutual consent of the parties.

In a letter, dated June 22, 1981, from Standard Federal to P. Reed Wills, II (in the latter's capacity as President of Wills Investment, Inc.) Standard Federal indicated that the construction loan commitment would expire if not closed by June 30, 1981. Evidently, the principal reason for the failure of Wills to close on the property was its inability to obtain title insurance owing to the debtor-in-possession having filed a petition under Chapter 11 of the Bankruptcy Code on April 2, 1981. Standard Federal required as a condition precedent in its loan commitment to Wills that the latter procure such title insurance prior to settlement. Although a deed regarding the conveyance of the subject properties was prepared, dated June 30, 1981, this deed was never recorded. Plaintiff's Exhibit 4.

The principal issue before the Court is whether the subject properties are still part of the bankruptcy estate of the debtor-in-possession. If the Court so finds, the trustee would have the authority, contingent upon Court approval, to sell the aforesaid properties, subject to any existing valid liens thereon.[6]

■ The sale of real property at auction is within the statute of frauds. Because of this, a bid is deemed accepted by an auctioneer "when he knocks the land down, and on the making by him of a memorandum of the sale and its terms, signed by [him], the contract for the sale is ... complete" at least insofar as the trustee under a deed of trust can compel compliance with the pur-

5. The auctioneer initially offered the lots individually—the total bids for which amounted to $614,000.00.

6. An appraisal of the subject nine (9) lots of property obtained by the trustee suggests a fair market value of $845,000.00. Testimony had at trial revealed that the trustee had entered into a written contract for the sale of the referenced

property with Reston Land Corporation, dated July 24, 1981, and executed by the trustee on July 27, 1981. This agreement, which is scheduled for settlement on October 2, 1981, requires the purchaser to make payment of $730,000.00 in cash upon the sale of the property, upon approval by the Court. A $10,000.00 deposit has been paid to the trustee.

chaser's bid. 13A Michie's Jur., *Mortgages and Deeds of Trust*, § 132 (1978 Repl.).[7]

■ The acceptance of the successful bid of a purchaser by the auctioneer constitutes an executory contract of sale. However, execution of such a contract requires payment of the purchase price by the successful bidder. *Yellowstone Livestock Commission v. Dupuis*, 133 Mont. 454, 325 P.2d 691, 693 (1958); 7 Am.Jur.2d, *Auctions and Auctioneers*, § 16 (1980).

■ It is not to be doubted that upon the conclusion of the sale of property at auction the seller, in his discretion, "may waive the terms of the auction sale by not insisting upon a compliance therewith by the buyer." *Id.* at § 14. The rationale for allowing such a waiver was succinctly stated by the Virginia Supreme Court in *Rogers v. Runyon*, 201 Va. 814, 821, 113 S.E.2d 679, 683 (1960). "By advertising the sale for cash instead of on terms the Robertsons were in a position to decide whether the successful bidder was a good risk for the extension of credit and forestall a repetition of a foreclosure they experienced with Rogers."

■ Compliance with the terms of sale, whether those stated at the auction, or modified by the seller thereafter, must be strictly met by the purchaser. Thus, the right of a purchaser to the title and possession of property at the time it was knocked down to him is contingent upon compliance "with the terms and conditions of purchase." *Crandall v. Woodard*, 206 Va. 321, 327, 143 S.E.2d 923, 927 (1965) (relating to auction sale of personal property).

■ In its closing argument at trial, Wills asserted that it became the equitable owner of the subject real property upon that property being knocked down by the auctioneer in its favor. Relying on the case of *Dunsmore v. Lyle*, 87 Va. 391, 12 S.E. 610 (1891), Wills maintains that equity should consider it the beneficial owner of the property and the seller as a trustee for it. As noted in *Clay v. Landreth*, 187 Va. 169, 173, 45 S.E.2d 875, 877 (1948), the theory of equitable conversion is limited to those instances "where the enforcement of the contract is in accord with the intention of the parties . . . and where it will not produce inequitable results." In this regard, the principles "which govern the enforcement of specific performance underlie the application of equitable conversion." *Id.*

It has been stated that " '[t]he doctrine of [equitable] conversion is based on the principle that equity regards things directed or agreed to be done, as having been actually performed *where nothing has intervened which ought to prevent a performance.*' " *Craig v. Leslie*, 3 Wheat. (16 U.S.) 563, 4 L.Ed. 460 (1818) *cited in Clay v. Landreth, supra*, 187 Va. 169, 45 S.E.2d at 878. This theory, when it arises from a contract, is characterized as a legal fiction "based upon the presumed intent of the parties." *Id.* The real purpose of this theory "is to give effect to the manifest intent of a . . . vendor and to treat that as done which . . . by previous contract with another both have mutually bound themselves to do." *Id.*

The remedy of equitable conversion (or specific performance) rests in the sound discretion of the Court. It is, therefore, incumbent upon the Court to examine the

---

7. Wills, citing *Powell v. Adams*, 179 Va. 170, 174–75, 18 S.E.2d 261, 263 (1942) and *Feldman v. Rucker*, 201 Va. 11, 21, 109 S.E.2d 379, 386 (1959), argues that a knockdown by the auctioneer completes the contract for sale. These decisions are distinguishable from the situation at issue herein. Although the court in the referenced cases speaks in terms of the contracts for sale being "consummated when the auctioneer cried the property out to the successful purchaser" this can only mean that the trustee on the subject property is empowered to collect the purchase money. In fact, the court in both cases stated that "[t]he only pow-

er remaining in the trustees, so far as the purchaser was concerned, was to collect the purchase money. . . ." Only by complying fully with the terms of the sale does the purchaser's inchoate interest vest by relating back to the instant the property was knocked down to him at auction. *See In re Russell*, 8 B.R. 342, 344 (Bkrtcy.W.D.Pa.1980) *citing Pennsylvania Co., etc. v. Broad Street Hospital*, 354 Pa. 123, 129, 47 A.2d 281, 284 (1946). A purchaser may then compel the trustees to "execute a proper deed conveying such property and title as has been conveyed to them." *Powell v. Adams, supra*, 179 Va. 170, 18 S.E.2d at 263.

circumstances of the case in order to establish whether such a demand for relief is well-founded. It is evident from this Court's review of the applicable case law, as heretofore discussed, that the doctrine of equitable conversion is inapposite to the case at bar. The Court must conclude that even if a suit for specific performance (relying upon a theory of equitable ownership in the subject property) did lie it would not be appropriate to grant such extraordinary relief under the facts of this case.

The Court is of the opinion that at the conclusion of the foreclosure auction Wills had at best an executory contract for the purchase of the subject property. Settlement by Standard Federal with Wills on the subject property was contingent upon Wills satisfying the terms and conditions set forth in the loan commitment. A final date for settlement on the loan commitment was established by Standard Federal as of June 30, 1981. The essential prerequisite to such settlement was the procurement of title insurance by Wills on the subject property. It is uncontroverted that Wills did not meet this prerequisite on or before June 30, 1981. The evidence clearly indicates that Standard Federal was unwilling to permit further extension for settlement on its loan commitment with Wills.

Based upon the record, the Court can draw no other concusion but that after June 30, 1981 Standard Federal refused to extend the commitment for loan monies necessary for Wills to meet the modified terms embodied in the loan commitment as agreed to by the parties after the foreclosure sale. Thus, the inability by Wills to fulfill the necessary conditions pursuant to the agreement and the commitment precluded consummation of the requisite terms of the contract which, in effect, caused the contract to fail.

Therefore, inasmuch as there exists no valid contract upon which Standard Federal can be compelled by Wills to transfer title to the latter, it is the judgment of this Court that the subject property remains in the bankruptcy estate of the debtor-in-possession. No other party having appeared in opposition, and no other evidence having been adduced as to why the sale proposed by the trustee should not be permitted free and clear of liens, said liens to be transferred to the proceeds, it is, therefore, appropriate that such relief should be granted.

An appropriate order will enter.