In re Robert Westley ROLEN Roxie Taylor Rolen, Debtors.

Robert Westley ROLEN and Roxie Taylor Rolen, Plaintiffs,

v.

SOUTHWEST VIRGINIA NATIONAL BANK and Mr. & Mrs. Johnny Griffin, Defendants.

Bankruptcy No. 7–82–00480.
Adv. No. 7–82–0276.

United States Bankruptcy Court, W.D. Virginia, Abingdon Division.

Jan. 20, 1983.

S. Strother Smith, III, Abingdon, Va., for debtor-plaintiffs.

James E. Nunley, Bristol, Va., Chapter 13 Trustee.

James F. Douthat, Roanoke, Va., for Southwest Virginia National Bank.

Dennis W. Heileman, Tazewell, Va., for Mr. & Mrs. Griffin.

## MEMORANDUM OPINION

H. CLYDE PEARSON, Bankruptcy Judge.

The issue before the Court is whether Debtors may recover real property auctioned at a foreclosure sale under a Deed of Trust one day before their Chapter 13 petition was filed.

On March 26, 1976, Robert W. and Roxie T. Rolen (Debtors herein) conveyed, in trust, two parcels of real property situate in Tazewell County, Virginia to secure the payment of a $20,000.00 indebtedness due Southwest Virginia National Bank (the Bank). Debtors were advised by certified letter dated March 1, 1982 that payments due under the note secured by the subject Deed of Trust were delinquent and that the entire debt plus accrued interest was immediately due and payable. A second certified letter dated March 4, 1982 informed the Debtors that the two parcels of property would be sold pursuant to the terms of the Deed of Trust on April 7, 1982.

The Rolens filed a Homestead Deed in the Clerk's Office of the Circuit Court of Tazewell County, Virginia on March 31, 1982. Debtors advised the Bank of this filing and of their plan to file a Chapter 13 petition in this Court. Debtors also advised Johnny H. and Sandra W. Griffin,

tenants of the subject property, of their financial condition and intent to file a petition.

On April 7, 1982, after proper notice and advertisement of sale, the Bank called the Clerk's Office of this Court to ascertain whether or not a petition had been filed by the Rolens. Upon being advised that no petition had been filed, the Trustee proceeded at 10:30 a.m. to offer the two parcels of property for sale. The property was bid in by a representative of the Bank for the sum of $16,700.00, an amount in excess of the indebtedness and costs of sale. The property was conveyed by the Trustee under the Deed of Trust to the Bank by deed dated April 7, 1982 and recorded in the Clerk's Office of the Circuit Court of Tazewell County at 12:35 p.m. on the same date.

At 8:30 a.m. on the following day, April 8, 1982, Debtors filed a Chapter 13 petition in this Court. Thereafter, on the same day, the Bank sold the subject property to Johnny and Sandra Griffin for $16,700.00. The property was conveyed by deed of even date and recorded in the above-referenced Clerk's Office at 4:30 p.m. on April 8, 1982.

The present adversary proceeding was instituted by the Rolens to recover the property. Debtors' argument is twofold: (1) that the Court should impose a constructive trust over the realty in favor of the Debtors and require the purchasers to reconvey the property; or, (2) that the alleged foreclosure sale should be set aside and Debtors allowed to cure the default in the indebtedness under a Chapter 13 plan. Counsel for the Bank contends that all rights of the Debtors in the property were terminated by the pre-petition foreclosure sale, thereby excluding this property from the bankruptcy estate and this Court's jurisdiction and preventing Debtors from curing the default.

Debtors' request for the imposition of a constructive trust is based on statements made by Johnny Griffin to Rolen in the presence of other witnesses. Debtor testified that upon learning of the pending foreclosure sale, Griffin told Rolen that if nothing was worked out between the Rolens and the Bank, they (the Griffins) would purchase the property at the foreclosure sale and reconvey it to the Rolens at a later date. Griffin did not deny at trial that this general conversation took place.

■■ The general rule is that in the absence of any element of fraud or mistake, or anything to indicate the existence of a confidential relationship between the parties, a constructive trust does not arise merely from a breach of agreement by one party to hold property conveyed to him in trust for the benefit of the other party. (*See* 76 *Am.Jur.* 2d, Trusts, § 234; 35 A.L.R. 280.) The inquiry as to whether a constructive trust arises in connection with an agreement to bid in and purchase for the owner or a party having an existing interest in the property at a judicial, execution, partition, tax, or similar sale goes, as in all cases of constructive trust, to fraud or abuse of confidence in the transaction. (76 *Am.Jur.* 2d, Trusts, § 244; 42 A.L.R. 79.) Usually, such a trust arises where there is some special relationship of trust and confidence between the parties, such as that of attorney and client, parent and child, etc. (42 A.L.R. 83) A constructive trust will be declared where it appears that the promisee furnished all or part of the purchase money; refrained from bidding by reason of the agreement or promise; relaxed his efforts to save the property from being sold or to prevent the sale at a sacrifice; where it appears that the promissor bought the property at a price greatly below its value; or that the agreement was known to other possible bidders and, as a consequence, chilled their bidding. (76 *Am.Jur.* 2d, Trusts, § 244; 27 A.L.R.2d 1285; 42 A.L.R. 83.)

■■ The numerous cases cited by Debtors' counsel involve one or more of the factors listed above. None of those indicia are present in the instant proceeding. There was no confidential or fiduciary relationship between Rolen and Griffin. There is no indication that Rolen detrimentally relied on Griffin's statements concerning his purchase of the subject property. The

Rolens had been advised by their attorney that no action was necessary other than to file a Chapter 13 petition. Furthermore, Griffin did not attend or bid at the foreclosure sale, so his "promise" had no effect on other possible bidders. For these reasons, the Court finds no clear and convincing evidence of a constructive trust.

The Court turns now to the question of whether the foreclosure sale may be set aside and the default in the indebtedness cured under a Chapter 13 plan. Counsel for Debtors contends that the Rolens continued to maintain an interest in the property at the time their petition was filed on April 8, 1982. The "so-called foreclosure sale" was imcomplete when the Bank bid the property in on April 7, 1982, as the Bank was not a *bona fide* purchaser and the transaction was not, in fact, completed until the secondary transfer was made by the Bank to the Griffins *after* the commencement of the case on April 8, 1982. The Debtors' interest became property of the bankruptcy estate upon filing of the petition. The secondary transfer by the Bank to the Griffins was in violation of the stay of 11 U.S.C. § 362 and must be set aside. The Rolens' indebtedness to the Bank would thus be reinstated and Debtors allowed to cure the default under a Chapter 13 plan pursuant to 11 U.S.C. § 1322(b)(5).

The Bank argues that where state law terminates a debtor's interest in mortgaged property, the Bankruptcy Court cannot rejuvenate that interest as part of a Chapter 13 plan. This position is supported by the cases of *In re Butchman*, 2 C.B.C.2d 174, 6 B.C.D. 403, H BR 379 (Bkrtcy.S.D.N.Y. 1980) and *In re Lynch*, 7 B.C.D. 1159, 12 B.R. 533 (Bkrtcy.W.D.Wis.1981). In both cases, the debtors' homes were sold pursuant to a foreclosure judgment shortly before the debtors filed a Chapter 13 petition. In both cases, the court reviewed the respective state law to determine when the debtor's interest in mortgaged property terminates. Because New York statutes limit the mortgagor's right to redeem property to any time before an actual sale under a judgment of foreclosure, the foreclosure sale in that case effectively cut off the debtors' legal title and they were not entitled to cure the default as part of their Chapter 13 plan. Under Wisconsin law, a foreclosure sale does not preclude the debtor's having an equity interest in the property so long as a foreclosure sale has not been confirmed.

The court made a similar finding in *In re Sparkman*, 3 C.B.C.2d 856, 9 B.R. 359 (Bkrtcy.E.D.Pa.1981). Here, the foreclosed property was sold at a Sheriff's sale prior to the filing of a Chapter 13 petition. Under Pennsylvania law, the debtor lost all title and interest when the mortgagee's attorney bid the property in at the Sheriff's sale, executed the required documents, and the acknowledged deed was delivered to the Sheriff. Consequently, the debtor had no interest in the property subject to the protection of 11 U.S.C. § 362.

To consider the present case, Virginia law must be reviewed to determine the nature of the Debtors' interest in the property at the time of filing. *Va. Code* §§ 55–58, *et seq.*, provide for the conveyance of realty by Deed of Trust to secure a debt, sale of the property in execution of the Deed of Trust, and the rights and duties of the parties having an interest in the property. The statutes provide that upon default in payment of the indebtedness secured by the Deed of Trust, the secured creditor may accelerate the indebtedness and request the trustee under the Deed of Trust to execute a sale. The creditor or the trustee must notify the debtor in writing of the acceleration and pending sale. At this point, the trustee holds legal title to the property conveyed in trust and the debtor has an "equity of redemption". This is an equitable right incident to every mortgage which allows the mortgagor to pay the indebtedness and require the secured creditor to reconvey the property free of the Deed of Trust lien. (See 13A *Michie's Jurisprudence*, Mortgages and Deeds of Trust, §§ 177–184.)

At common law, the equitable right to redeem continues until a sale under a foreclosure. Redemption rights after

a foreclosure sale are purely statutory. *Parker v. Dacres*, 130 U.S. 43, 9 S.Ct. 433, 32 L.Ed. 848 (1889); 55 *Am.Jur.* 2d, Mortgages, §§ 510, 513, 864, 865. As Virginia has no statutory period of redemption, we must consider the question of when the foreclosure sale is final. Virginia law appears conclusive on this point. In a sale by a trustee under a Deed of Trust, the sale is complete when the trustee knocks the land down to the bidder, makes a memorandum of the sale and its terms, and signs the same. The contract is as complete at this time as the contract for sale made by a commissioner is when the court accepts the bid by confirming the sale. *Feldman v. Rucker*, 201 Va. 11, 109 S.E.2d 379 (1959); *Powell v. Adams*, 179 Va. 170, 18 S.E.2d 261 (1942); 13A *Michie's Jurisprudence*, Mortgages and Deeds of Trust, § 132.

■ In the present case, the evidence clearly indicates that the indebtedness to the Bank was in default, the Debtors were properly notified of the acceleration and proposed sale, and that the sale was advertised and conducted pursuant to the terms of the Deed of Trust and the *Code of Virginia*. Counsel for Debtors claims that the Bank was not a *bona fide* purchaser at the sale. The Bank was clearly on notice that Debtor intended to file a petition in this Court and, in fact, filed the petition while Bank held the property prior to sale to the Griffins. The Bank, as a holder of a note secured by a Deed of Trust, had a right to bid in the property at a foreclosure sale. *Title Ins. Co. v. Industrial Bank*, 156 Va. 322, 157 S.E. 710 (1931).

Questions are raised by other courts as to whether, in a Chapter 13 case, state law is controlling in the determination of when a default may be cured. 11 U.S.C. § 1322(b)(5) states that a Chapter 13 plan may provide for the curing of any default within a reasonable time. The court in the case of *In re Taddeo*, 685 F.2d 24, 6 C.B. C.2d 1201, 9 B.C.D. 556 (2d Cir.1982), says that, as used in the Bankruptcy Code:

"Curing a default commonly means taking care of the triggering event and returning to pre-default conditions. The consequences are thus nullified."

Based upon this thesis, the *Taddeo* court held that a state law holding that a default cannot be cured "must fall before the Bankruptcy Code". The same conclusion was reached by the court in *Matter of Hubbard, Jr.*, 23 B.R. 671, 9 B.C.D. 1008 (Bkrtcy.S.D.Ohio 1982). In these cases, the courts apply the principle that a debtor's right to cure default and retain property is paramount and the federal Act clearly intends this result so that a debtor may rehabilitate his financial position as 11 U.S.C. § 1322 provides.

In *Taddeo, supra,* the Second Circuit, speaking through one of its most learned members, ably demonstrates this Congressional intent. The difference in procedural foreclosure there and here is the lone distinction to be made. If the state law on foreclosing Deeds of Trust in Virginia is final under the facts here, then the principles of *Taddeo* should not apply. There is no dispute that the trustee and Bank had full knowledge of the Debtors' intention; that the petition was filed on the day following the sale invoking the 11 U.S.C. § 362 stay which was binding upon the Bank, whether it knew of the filing or not; that the extreme haste in the foreclosure process and the making and recording of the trustee deed spoke louder than words; that the purpose was to finalize the foreclosure to avoid Chapter 13 provisions of the federal Act; and the hasty resale the next day after approving a loan to the purchaser, are all indicative of the purpose of the parties. However, all the above does not substitute for the law of Virginia on finality of foreclosure.

Accordingly, an Order will be entered.