**Muhammad Ali H. ABDELHAQ and Amal Muhammad Abdelhaq, Appellants,**

v.

**John R. PFLUG, Jr., Trustee, Pflug/Long Partnership, John R. Pflug, Jr. and John Long, General Partners, Appellees.**

Civ. A. No. 87–0945–A.
Bankruptcy No. 87–00286–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Feb. 22, 1988.

David C. Canfield, Mary C. Barton, Mays & Valentine, Arlington, Va., for Pflug, et al., appellees.

Richard J. Stahl, Stahl & Buck, Annandale, Va., for Abdelhaq, et al., appellants.

**MEMORANDUM OPINION**

ELLIS, District Judge.

*I.  Introduction*

Muhammad and Amal Abdelhaq (referred to collectively as "the Abdelhaqs") appeal from a decision of the Bankruptcy Court for the Eastern District of Virginia granting John Pflug and Pflug/Long Partnership relief from the automatic stay of section 362 of the Bankruptcy Code, 11 U.S.C. § 362,[1] with respect to settlement of a foreclosure sale of two condominium units. The question presented is what, if any, interest the Abdelhaqs retained in property which was sold at foreclosure prior to the filing of their bankruptcy petition. The answer to this question underlies, and is fundamental to, the other issues in this case: (i) whether any interest in the property was included in Abdelhaqs' estate under section 541 of the Bankruptcy Code, 11 U.S.C. § 541, and therefore whether appellants have the right to reject the contract of purchase entered at the foreclosure sale, 11 U.S.C. § 365(d)(2), and (ii) whether the bankruptcy court had discretion to allow the Abdelhaqs to cure the default on the indebtedness secured by the property.

---

1. Section 362 states that the filing of a bankruptcy petition shall act as a stay with respect to any act to obtain possession of property of the debtor's estate. 11 U.S.C. § 362(a)(3).

## II. *Facts*

The facts of this case are essentially undisputed. The Abdelhaqs were the owners of two condominium units, numbers 38 and 53 in Falls Church, Virginia.[2] The property was the subject of two deeds of trust securing two loans. The first deed of trust, executed in favor of First American Savings and Loan Association (now Ameribanc Savings Bank), secured a note for $233,600. John Pflug ("Pflug") was a guarantor of this note. Pflug also held a note in the principal amount of $31,500, which was secured by a second purchase money deed of trust on the two condominium units.

Muhammad Abdelhaq subsequently defaulted on payment of the Ameribanc note. On August 25, 1986, at 11:00 a.m., Ameribanc's trustee held a foreclosure sale. Pflug/Long Partnership ("the Partnership"), the high bidder, purchased the property for $270,000. The trustee and the Partnership executed a memorandum of sale, and the Partnership made a deposit of $30,000 on the property.

At approximately 2:00 p.m. on the date of the sale, the Abdelhaqs filed a bankruptcy petition under Chapter 7 of the Bankruptcy Code. At the Abdelhaqs' request, the court later converted the case to a Chapter 13 proceeding. Although the Partnership was ready, willing and able to pay the remainder of the purchase price, it agreed with Ameribanc's trustee to extend the date for settlement until the bankruptcy proceeding was resolved. On November 4, 1986, the petition was dismissed owing to the Abdelhaqs' failure to meet the deadline for filing a plan.[3] Settlement on the sale of the condominiums to the Partnership was then scheduled for February 20, 1987.

On February 17, 1987, the Abdelhaqs filed a second petition for bankruptcy under Chapter 11. Pflug and the Partnership then sought relief from the section 362 stay to settle on the trustee's sale. At about that time, the Abdelhaqs filed notice of their intent to sell one of the condominium units to George Chaplin, trustee, for $240,000. The bankruptcy court denied relief from the stay and approved the Abdelhaqs' contract, relying on Muhammed Abdelhaq's testimony that he would pay all existing liens if the sale were permitted to take place. The court, however, gave the Pflug and the Partnership leave to renew their motion if the sale did not occur.

Settlement on the Abdelhaqs' contract was scheduled for June 30, 1987. It never occurred; title problems prevented settlement. Despite the title defects, the purchaser was willing to give the Abdelhaqs additional time to cure. Pflug and the Partnership filed a second motion for relief from the stay.

## III. *The Bankruptcy Court's Ruling and Issues on Appeal*

At a hearing on July 24, 1987, the bankruptcy court granted relief from the stay.[4] The court perceived the question presented to be whether the filing of a bankruptcy petition prevents settlement on a pre-petition foreclosure sale. The court answered this question in the negative. According to the court, "[T]he falling of the hammer is the sale of the property, and subject to the completion of [the terms of the sale], that is the end of it." Pflug and the Partnership were therefore granted relief from the section 362 stay, which the court and the parties apparently assumed applied to the property.

On appeal, the Abdelhaqs complain that the bankruptcy court erred in finding that their interest in the property was cut off when the hammer fell. They argue that because the deed was not delivered to the Partnership prior to the filing of the bankruptcy petition, they retained an interest in the property. Hence, the property is part

---

**2.** Muhammad Abdelhaq originally owned the property with Grace Aoki. Aoki later sold her interest in the units to Abdelhaq and his wife, Amal Abdelhaq.

**3.** There is apparently some confusion as to why the Abdelhaqs failed to file a plan. However, the reason for this failure is not relevant to the issues presented here.

**4.** On September 1, 1987, the court confirmed this ruling.

of the debtors' "estate" under 11 U.S.C. § 541. Even if the court's interpretation of Virginia law was correct, the Abdelhaqs claim that the court's ruling frustrates the debtor's right to cure defaults under 11 U.S.C. § 1123(a)(5)(G).[5] Accordingly, they argue that the date of delivery of the deed should be chosen as the time of completion of the sale. The Abdelhaqs further claim that as debtors in possession with an interest in the property, they have the right to reject the contract for sale of the condominiums. 11 U.S.C. §§ 103(a), 1107(a), 365(d)(2).[6] Alternatively, the Abdelhaqs contend that the court abused its discretion in refusing to allow them time to cure the defects in title which prevented the settlement of their contract with Chaplin.

Pflug and the Partnership respond that the court's ruling was correct as a matter of Virginia law. Because the Abdelhaqs possess no interest in the property, they have no right under § 365(d)(2) to reject the contract of sale between Ameribanc and the Partnership. They also argue that the bankruptcy court did not abuse its discretion in lifting the stay because the Abdelhaqs have no right to cure the default under the Bankruptcy Code and made no showing that they were able to resolve the title problems that prevented conveyance of the property.

For the reasons that follow, this Court affirms the result of the bankruptcy court's ruling, namely that the section 362 automatic stay is no impediment to the consummation of the foreclosure sale of the condominium units. But this Court's reasoning in reaching this conclusion is different from that of the bankruptcy court. The latter apparently assumed that the Abdelhaqs retained some interest in the property at the time they filed for bankruptcy and that this interest became part of Section 541 estate to which an automatic stay

attached, preventing consummation of the foreclosure sale. In sharp contrast, this Court concludes that the foreclosure sale extinguished the Abdelhaqs' remaining rights in the property and no automatic stay was ever effective with respect to settlement on the foreclosure sale.

## IV. *Analysis*

The bankruptcy court was correct in holding that a foreclosure sale occurring prior to the filing of a bankruptcy petition cuts off the debtor's interest in the foreclosed property. Under Virginia law, a deed of trust conveys legal title to the property to the trustee. Va.Code § 55–58. The debtor retains the equitable right to repay the indebtedness secured by the trust and obtain the property upon full payment. The trustee has the right upon default to accelerate the debt secured on behalf of the trust beneficiary, take possession of the property and sell it. Va.Code § 55–59(6).

After acceleration of the debt and before sale, the debtor has an "equity of redemption." *In re Rolen*, 39 B.R. 260, 263 (Bkrtcy.W.D.Va.1983). Equity of redemption allows the debtor to pay the indebtedness and require the secured party to reconvey the property to him free of the deed of trust lien. *Id.* Once the property is sold, the debtor's equitable interest is extinguished, unless he can show that there was some deficiency in the sale process. *See In re Rolen*, 39 B.R. at 264; *see also, e.g., Turk v. Clark*, 193 Va. 744, 71 S.E.2d 172, 176 (1952) (trustee's sale void where notice and advertising provisions contained in deed of trust were violated); *Cromer v. DeJarnette*, 188 Va. 680, 51 S.E.2d 201, 204 (1949) (sale may be invalidated if sale price grossly inadequate). According to the Bankruptcy Court for the Western District of Virginia, "Virginia law appears to be

---

**5.** That section provides, in pertinent part:
    (a) A plan shall—
    ....
      (5) provide adequate means for the plan's execution, such as—
    ....
      (G) curing or waiving any default[.]
  11 U.S.C. § 1123(a)(5)(G).

**6.** Section 1107 states that for the purposes of Chapter 11 of the Bankruptcy Code, a debtor in possession has all the rights of a trustee in bankruptcy. In turn, section 365(d)(2), made applicable to Chapter 11 through section 103(a), provides that a trustee may reject an executory contract of a debtor at any time before confirmation of a plan.

810

conclusive [that] [i]n a sale by a trustee under a Deed of Trust, the sale is complete when the trustee knocks the land down to the bidder, makes a memorandum of the sale and its terms, and signs the same." *In re Rolen*, 39 B.R. at 264.

The Abdelhaqs are correct in asserting that Virginia law requires a deed to transfer legal title to real property. *See* Va. Code § 55–2. However, this rule does not change the fact that they possessed neither a legal nor an equitable interest in the property once the auctioneer's hammer fell and the memorandum of sale was signed. At this point, and before settlement, the trustee retains legal title to the property, while the purchaser possesses the right to enforce the sale in equity. *See Ryland Group, Inc. v. Wills*, 229 Va. 459, 331 S.E.2d 399, 402–03 (1985). Thus, because the Abdelhaqs possessed no interest in the condominium units at the time they filed their petition, the property never became part of their estate under section 541. From this it follows, of course, that no automatic stay ever attached to the property to halt consummation of the foreclosure sale.

Citing *In re Community Investments Associates I*, 14 B.R. 211 (Bkrtcy.E.D.Va. 1981), the Abdelhaqs argue that the bankruptcy court has previously recognized that property foreclosed upon before the filing of a petition remains an asset of the debtor in possession. The court below, however, correctly distinguished that decision. There, the purchaser at the foreclosure sale was unable to comply with the terms of the contract of sale, thus causing the contract to fail. The property therefore remained in the debtor's estate. *Id.* at 215. Here, there is no dispute that the appellees were at all times ready, willing and able to comply with the terms of the sale contract

and to proceed with settlement. Accordingly, *Community Investment Associates* is inapposite and of no avail to the Abdelhaqs.[7]

Apposite authority exists, however, and it supports the conclusion reached here. In *In re Cretella*, 42 B.R. 526 (Bkrtcy.E.D.N.Y.1984), a Chapter 13 case, the debtor also claimed that because the deed was not delivered prior to the filing of the bankruptcy petition, he retained an interest in the foreclosed property. Applying New York law, the court held that the pre-petition purchase of property at a foreclosure sale divests the debtor of any interest in the property, regardless of when the deed to the property is delivered. *Id.* at 530. According to the court, foreclosure sale also cuts off any right to cure a default provided under the Bankruptcy Code. *Id.* at 530–31. In determining that a debtor's interest is extinguished at the time of a foreclosure sale, the court found it significant that under state law, a debtor's right to redeem the property extends only to the time of sale. *Id.* at 532. As discussed above, the same rule applies in Virginia. While the court expressed its sympathy with debtors seeking to protect their homes, it noted that this end can be accomplished simply by filing a petition prior to the foreclosure sale. *Id.* at 532, 533.[8]

This Court rejects the argument that its holding here will frustrate the right to cure defaults provided under section 1123(a)(5)(G). As the Sixth Circuit stated in *In re Glenn*, 760 F.2d 1428 (1985), *cert. denied*, 474 U.S. 849, 106 S.Ct. 144, 88 L.Ed.2d 119 (1985), in interpreting a similar provision in Chapter 13 of the Code,[9] "All courts agree that at some point in the foreclosure process, the right to cure a default is irretrievably lost; however, the statute itself provides no clear cut-off point

7. The bankruptcy court stated that it would reconsider its order granting relief from the sale should settlement not occur.

8. Virginia law requires that written notice of a foreclosure sale be given to the owner of the property. Va.Code § 55–59.1. The notice requirement may be satisfied by mailing a copy of the foreclosure sale advertisement or a notice containing the same information at least four-

teen days prior to the sale. Va.Code §§ 55–59.1, –59.2.

9. Section 1322(b)(5) provides, in pertinent part:
   (b) [T]he plan may—
   ....
   (5) ... provide for the curing of any default within a reasonable time....
   11 U.S.C. § 1322(b)(5).

except that which the courts may see fit to create." *Id.* at 1435.[10] Thus, the Code itself gives no guidance as to when the right to cure terminates. In *Glenn*, after balancing the interests of debtors and creditors, the court chose the foreclosure sale as the cut-off point. *Id.* at 1436.

Two factors mentioned by the Sixth Circuit are especially pertinent here. First, a foreclosure sale comes only after considerable notice to the debtor, giving him an opportunity to cure the default or file for bankruptcy. Debtors, therefore, will not be unduly prejudiced by a rule which requires them to file their petitions prior to the foreclosure sale. Second, if a later date were selected, bidding at foreclosure sales, which are designed to yield the highest possible price for the property, may be significantly deterred: "potential bidders may be discouraged if they cannot ascertain when, if ever, their interest will become finalized." 760 F.2d 1428, 1436. Debtors, as a group, would be likely to suffer if prices at foreclosure sales were depressed due to uncertainty about ownership interests. Thus, choosing the foreclosure sale as the cut-off point is not only consonant with state law, but also does not conflict with the Bankruptcy Code.[11]

Because the condominium units are not part of the Abdelhaqs' estate under section 541, the Abdelhaqs have no right under 11 U.S.C. § 365(d)(2) to reject the contract of sale to the Partnership. In fact, for the same reason, the automatic stay provision of section 362 never applied to the property. *See In re Cretella,* 42 B.R. 526, 532 (automatic stay does not apply when debtor has no interest in property at time of commencement of bankruptcy proceedings). The Abdelhaqs had no right under the Bankruptcy Code to cure the default on the Ameribanc loan, and thus the court below

had no authority to give them additional time to settle the contract of sale which they had negotiated.

Accordingly, the result of the bankruptcy court's ruling is affirmed. An appropriate order accompanies this opinion.

---

10. The *Glenn* court also noted that most courts have agreed that debtors may not reinstate mortgages under the Bankruptcy Code if the petition is filed after the state redemption period has expired. *In re Glenn,* 760 F.2d 1428, 1432; *see also In re Anderson,* 29 B.R. 563, 565 (Bkrtcy.E.D.Va.1983) (section 1322(b) allows debtors to cure defaults in cases in which there is still a right of redemption under state law).

11. The decision in *In re Chitwood,* 54 B.R. 396 (Bkrtcy.W.D.Va.1985), may be read to adopt a contrary view and to be inconsistent with the Western District's previous decision in in *In re Rolen,* 39 B.R. 260 (Bkrtcy.W.D.Va.1983). *See supra* pp. 809–10 (discussing *Rolen*). For the reasons stated in the text, this Court disagrees with the result and reasoning in *In re Chitwood.*