**In re Robert Mark COLE, Katherine Montgomery Cole, Debtors.**

**Bankruptcy No. 88–1205–N–B.**

United States Bankruptcy Court,
E.D. Virginia,
Norfolk Division.

Aug. 2, 1988.

Sidney Sacks, for Mark Kantro.

Jack D. Maness, for Leon & Harvey Leach.

Carolyn L. Camardo, for debtors.

Robert V. Roussos, Norfolk, Va., for Bruce H. Gould.

## OPINION AND ORDER

HAL J. BONNEY, Jr., Bankruptcy Judge.

The debtors, Robert Mark and Katherine Montgomery Cole, contend that Bruce H. Gould, Esquire, Mark Kantro, Esquire, and Leon and Harvey Leach violated the automatic stay which arose upon their filing of a Chapter 13 petition. The Coles seek to hold Gould in contempt for his actions taken as trustee under a deed of trust in completing his transfer of their home in Norfolk. Kantro as counsel for the Leaches, and the Leaches, who purchased the Coles home at the foreclosure sale, are alleged to have violated the stay by filing an action in the state court to remove the Coles from their home once the title had been transferred.

The facts are uncontroverted. The Coles' home was set to be sold at a foreclosure sale on April 12, 1988 at 10:00, by the trustee, Gould. The day before, the Coles sought and obtained counsel who called and left a message for Gould at 5:37 P.M., April 11, that the Coles would be filing bankruptcy.

The morning of the scheduled foreclosure sale, Gould wanted to verify whether a petition had been filed. He called the bankruptcy court Clerk's office a number of times, being told none was filed. He also called Coles' attorney's office.

The Leaches were present while Gould sought to determine whether an order for relief was entered, and learned that the Coles had intended to file bankruptcy. They had visited the property to be sold

that morning and wished to place a bid notwithstanding that a filing was contemplated. At 10:10 A.M., April 12, Gould made his last attempt to determine whether a petition had been filed. He was again told by the Clerk's office that none had been filed, with the exception of one that had been rejected (which was a petition filed by the Coles but lacking a list of creditors sworn to be true under the penalty of perjury). He again called Coles' attorney's office and was told a petition was being filed. At 10:10 A.M., Gould told the Leaches no petition had been filed. He then conducted the sale and accepted the Leaches bid concluding the sale for $18,001.00. The Leaches tendered a check for that full amount to Gould.

Gould testified he made a memorandum of the sale. A photocopy was introduced into evidence. It contained a copy of the trustee's advertisement, the check, and notes he said he made during the sale listing the indebtednesses the property was subject to and who to contact in that regard. The Coles contend this was not a memo of sale.

At 10:20 A.M., a bankruptcy petition was finally filed. The automatic stay went into effect.

The following actions took place subsequent to the Coles' filing. Gould returned the Leaches' check for $18,001.00 and took a check for a $500.00 deposit as allowed by the terms of sale. Several days later the closing took place and a trustee's deed was recorded.

On April 27, 1988, Kantro filed an action in state court for unlawful detainer on behalf of the Leaches. Robert and Katherine Cole were the named defendants. A hearing was held on May 12, 1988 at which time the state court judge dismissed the action.

Kantro was aware, prior to instituting this action, that the Coles had filed bankruptcy. He had received a letter from Mr. Gould and a phone call from Coles' attorney. Harvey Leach learned of the bankruptcy at the closing which took place prior to the unlawful detainer action being filed. Leon Leach at least knew that a petition was going to be filed. Neither the Leaches nor Kantro received a notice from this court according to their testimony.

Gould was aware that a petition had been filed prior to the closing and conveying the property. He also testified that he had learned that this court had previously ruled from the bench that the fall of the hammer completed the sale and that he believed he had not violated the automatic stay.

There has been no evidence or argument that the trustee did not follow the terms of the deed of trust or the Virginia Code in carrying out the sale.

The first issue to be considered concerns the effect of the foreclosure sale on the rights of the debtors in the property.[1]

A recent ruling by the U.S. District Court in Alexandria makes clear that a completed pre-petition foreclosure sale extinguishes the debtor's remaining rights in the property making the automatic stay inapplicable to actions taken in settlement of the sale including the recording of the deed. *Abdelhaq v. Pflug*, 82 B.R. 807 (E.D. Va.1988). If the stay is inapplicable, no ground for contempt exists.

On the issue of when the sale is complete, the *Abdelhaq* court cited the law in Virginia found in *In re Rolen*, 39 B.R. 260 (W.D.Va.1983) stating that "according to the bankruptcy court for the Western District of Virginia, 'Virginia law appears to be conclusive [that] [i]n a sale by a trustee under a Deed of Trust, the sale is complete when the trustee knocks the land down to the bidder, makes a memorandum of the sale and its terms, and signs the same' ". *Abdelhaq*, at 809–10.

Accepting this to be the state of the law and the fact that a bid was knocked down this Court need only then determine wheth-

---

**1.** Coles cite *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983) in support of their position. The case is distinguished in that here, as this Court holds, there was a sale. Also, the Supreme Court expressly reserved decision on the application of its ruling in Chapter 7 and Chapter 13 cases. *See,* footnote 17, 462 U.S. at 208, 103 S.Ct. at 2315.

er there was a memorandum of sale prior to the petition.

■ Gould testified he made one and alleged contemnors' counsel contend in their brief that one was made before 10:20. Debtors contend the opposite. Neither side has presented any case law as to what Virginia law considers a memorandum of sale.

A memorandum of sale has no specific form. The requirement of a memorandum stems from the fact that the statute of frauds is applicable to sales of land. *In re Community Investments Associates 1,* 14 B.R. 211, 213 (E.D.Va.1981), and *see, e.g. Holston v. Pennington,* 304 S.E.2d 287, 291 (1983). Its form must satisfy the statute of frauds. In *Holston,* any written notation of the buyer's name and his bid is held sufficient, citing the case of *Brent v. Green,* 33 Va. (6 Leigh) 16 (1835), the buyer himself need not sign because after the knock down of the property, the trustee is the agent of both the seller and purchaser. At 291.

Here there is a photocopy of notes which do not state the purchaser's names. The terms of the sale do appear as there is a photocopy of the advertisement and there are handwritten note regarding the other encumbrances on the property, but the amount bid does not appear. There is a check that was made out to Gould, as trustee and signed by Dr. Leon A. Leach upon which the address of the foreclosure property is noted. No Virginia cases have discussed whether or not a check is a sufficient memorandum. There is conflicting authority for either holding. *See* Annot., 9 A.L.R.4th 1009.

This Court is of the opinion that a sufficient memorandum exists.

■ This court also holds that the sale was complete even without a memorandum under Virginia law.[2] There are cases which discuss when a contract is formed through the bidding process. These cases indicate the sale is complete at the fall of the hammer accepting the bid. *C.F., In re Rolen,* 39 B.R. 260 (Bankr.W.D.Va.1983).

Notwithstanding those cases, the Coles have provided the court with a copy of a Western District of Virginia Bankruptcy Court opinion where the court holds that the failure to have a memorandum renders the sale incomplete and allows the debtor to cure a default in the mortgage. That decision is not binding, however, and this court does not so follow suit in regards to the motion for contempt before it.

The Western District decision relies on *In re Rolen,* 39 B.R. 260 (Bankr.W.D.Va. 1983) for its statement of Virginia law. That case in turn cites two cases and *Michies Jurisprudence* in concluding that a sale is not complete without a memorandum. *In re Rolen,* 39 B.R. 260, 264 (1983), citing *Feldman v. Rucker,* 201 Va. 11, 109 S.E.2d 379 (1959); *Powell v. Adams,* 179 Va. 170, 18 S.E.2d 261 (1942); 13A *Michies Jurisprudence,* "Mortgages and Deeds of Trust", Section 132.

Neither of the two Virginia cases are on point, and, in fact, offer little or no support for the proposition. In *Feldman,* there was the knock down of a bid and a memorandum. 201 Va. at 12, 109 S.E.2d 379. It was only mentioned as a fact in the case. Nowhere, however, did the Virginia Supreme Court state that a memorandum was critical to any issue in the case. In fact, a Shephardizing of the case reveals that with the exception of bankruptcy courts, the case has been cited by the Virginia Courts for the proposition enunciated regarding res judicata and not completed or incomplete sales.

*Feldman* in turn cites *Powell v. Adams* for this quote: " 'The contract of sale was consummated when the auctioneer cried out the property to the person making the highest and last bid. The only power remaining in the trustees, so far as the purchaser was concerned, was to collect the

---

**2.** The District Court, in *Abdelhaq,* supra, appears to adopt the view of Virginia law stated by this bankruptcy court. The precise issue before this court, now, is whether the sale was complete at the fall of the hammer. The *Abdelhaq* court did not consider whether a memorandum of sale was an absolute necessity because one existed in that case. As the issue before this Court is distinguishable, this Court's holding is not contrary to the District Court's.

purchase money and execute a proper deed conveying such property and title as had been conveyanced to them.' *Powell v. Adams, supra,* at 174 [18 S.E.2d 261]." *Feldman* at 21, 109 S.E.2d 379.

*Powell* dealt with issues concerning the duties of a trustee. It offers no support for the position requiring a memorandum of sale. And appears to support a proposition to the contrary.

What then is this State's law concerning foreclosures? There are no Virginia cases where a grantor under a deed of trust has challenged the absence of a memorandum of sale. An Alabama case, *Drake v. Rhodes,* 155 Ala. 498, 46 So. 769 (1908) (discussed below) covers this precise issue.

*Holston v. Pennington,* 225 Va. 551, 304 S.E.2d 287 (1983) is, however, far better authority than the other Virginia cases in that it concerned auction sales of land. The Court also holds that a contract is consummated upon the acceptance of a bid.[3] The purchasers whose bids were accepted formed binding contracts of sale with the owners when the hammer fell. *Holston* 304 S.E.2d at 290. The acceptance of and knock down of the Leaches bid completed the sale.

■ As noted, the memorandum of sale takes what would otherwise be an oral contract outside the statute of frauds. Failure to have such a memorandum does not negate that a contract was formed.[4]

■ The Coles, except for their having filed for bankruptcy, stand in the same situation as the mortgagor, in *Drake v.*

*Rhodes,* 155 Ala. 498, 46 So. 769 (1908). In that case, there was a foreclosure sale without a memorandum. The mortgagor sought to attack the sale in part on the basis of this failure to satisfy the statute of frauds. The court held that only the mortgagee and purchaser can take advantage of the omission of the writing. Such sale is voidable only and the defense personal. 46 So. at 770. The Coles, as grantors under the deed of trust, cannot attack the sale.[5]

■ The line is drawn at the fall of the hammer. In this case, there was a trustee who did everything possible to comply with any rights the debtor might have which arise upon the filing of a bankruptcy petition. The sale was delayed and numerous calls were made. A petition was filed, but after the sale was concluded. It is harsh to hold that the house was no longer property of the debtors' estate, subject to the automatic stay. This of course means they lose their home. It must, however be mentioned that a foreclosure sale comes only after considerable notice to the debtor. *Abdelhaq,* at 811.

■ Turning to the remaining issue concerning the applicability of the automatic stay to the action taken by Leaches and counsel, since the property was not part of the debtor's estate at the filing of the bankruptcy, there was no violation of the automatic stay. *See* 11 U.S.C. 362(a)(3).

IT IS SO ORDERED.

---

**3.** As additional support for the proposition that a sale is consummated, the United States Supreme Court examined the state of the law concerning auction sales of land. In *Blossom v. Railroad Co.,* 70 U.S. (3 Wall.) 196, 18 L.Ed. 43 (1865), the Court discusses the authorities of the day, and holds that there was no sale because the property was not struck off to the purported buyer, "nor was his bid, by act or word or in any manner, ever accepted by the seller ...". (3 Wall) at 208. The U.S. District Court, in *United States v. Conrad,* 619 F. Supp 1319, 1321 (M.D.Fla.1985) also held that the fall of the hammer creates a binding contract between the seller and high bidder in regard to auction sales of personalty.

**4.** The Virginia Code's statute of frauds, Section 11–2, provides "no action shall be brought in

any of the following cases ...". It does not make the contract void. *Burruss v. Hines,* 94 Va. 413, 26 S.E. 875 (1897).

**5.** Virginia, by statute, makes contracts without a writing, for the sale of real estate, and certain other oral contracts, void as to purchasers for value, without notice, and creditors. Va. Code Section 11–1 (1985). There is no provision that voids oral contracts for the sale of land as to grantors under a deed of trust. The rule in *Drake* is, therefore, not made inapplicable by statute, and given the code's silence as to grantors in the Coles situation, one could conclude that a grantor could not challenge a foreclosure sale based on the absence of a memorandum of sale.