## CIRCUIT COURT OF ORANGE COUNTY

Orange County

v.

Charles O. Morgan et al.

### May 27, 1992

### Case No. (Chancery) E88–174

BY JUDGE ROBERT K. WOLTZ

This is my opinion in this case the primary issue of which is the effectiveness of an officer's return on process, stating how and on whom service was had, when that service is controverted by the person purportedly served. Ancillary to that is the standard of proof necessary successfully to attack the factual assertions contained in a return and thus its validity. In inverse order the rulings are that the standard of proof required is by clear and convincing evidence. That standard has not been met in attacking this return. As a consequence the return is effective for its intended purpose and the service of process with officer's return annexed is good and valid.

In 1982 the defendants Morgan and wife purchased the subject property in Orange County, giving a deed of trust on it to the defendant L. B. Chandler, Jr., Trustee, to secure to B. K. Haynes Corporation, the payment of a note of $25,743.60. Real estate taxes for the years 1984 through 1988 became delinquent. Proceeding under Article 4, Bill in Equity for Sale of Delinquent Land, of Chapter 39, Title 58.1, Code of Virginia, 1950 as amended, Orange County in accordance with § 58.1–397 filed its bill to subject the real estate to the lien for the delinquent taxes. Somewhat fatuously the statute provides that, "All necessary parties shall be made parties defendant," but further states that a deed of trust beneficiary is not in all circum-

stances a necessary party: "The beneficiary or beneficiaries under any deed of trust . . . shall not be deemed necessary parties provided the trustee or trustees under the deed of trust . . . are made parties." Consonant with those provisions the Morgans, record title holders, and Chandler as trustee were named as defendants in the bill of complaint but not the trust beneficiary of record, B. K. Haynes Corporation.

Personal jurisdiction over the Morgans was asserted pursuant to the Long Arm Statute, § 8.01–328.1, by service on them through the Secretary of the Commonwealth, § 8.01–329. Neither of them appearing, the bill was taken for confessed as to them. There is an exhibit filed of a purported deed from the Morgans to one James E. Wilson presumably of Oregon and on an Oregon deed form but which is not in such form as to be recordable in Virginia, the signatures of the grantors not being acknowledged or even signed at the proper place on the form, the parties presumably acting as their own conveyancers with unfortunate result. Wilson has not petitioned to intervene and is not a party. On surmise one might conclude that the real estate tax delinquency in this case arose because the record owners, the Morgans, did not forward tax bills to Wilson or if they did the latter disregarded such levies. It further appears, however, that Wilson did pick up on the deed of trust payments in a substantial amount to the trust beneficiary B. K. Haynes Corporation.

Process against the trustee, Chandler, was issued to the Sheriff of Albemarle County for service at the former's place of business there. The Proof of Service form returned and filed with the papers bears a return showing execution by delivering a true copy of the papers "in writing, to L. B. Chandler in person. T. W. Hawkins, Sheriff of Albemarle County, Va. By Robert Layman, Deputy Sheriff." At the extreme bottom of the form and well below the Clerk's memo of filing appears admittedly in Layman's handwriting the name Cherly (sic) Keffer. Chandler did not file pleadings or otherwise appear in response to claimed service of original process.

The matter was subsequently referred to a commissioner in chancery to inquire and report on references typical to those for enforcement of liens against real estate. The commissioner reported among other matters that the real estate taxes and the deed of trust mentioned above were liens on the property. His report was confirmed by decree which also ordered sale of the property at auction. Right of

redemption of the real estate by paying the amount of the tax lien into court before the date of the judicial sale is preserved to the owner or his successors in interest by §§ 58.1–3965 and 58.1–3974, but was not exercised.

Sale was had, the property being knocked down to Richard D. Cox, the special commissioner further reporting that if the sale were consummated there would be a surplus of more than $10,000.00 above payment of costs and lien. Decree was entered confirming the sale, approving a partial scheme of distribution and providing that the liens against the property be transferred to the proceeds of sale. Because of the surplus and lack of appearance by the trustee under the deed of trust, witness subpoenas were served on Chandler as trustee and to the registered agent of the trust beneficiary, B. K. Haynes Corporation, with certified copy of the confirming decree attached, for their appearance in court for the purpose of determining the status of the deed of trust.

Responsive thereto Chandler, asking leave to do so, filed his petition alleging substantially that the original process in the suit was never personally served upon him, nor did it come to hand nor did he have knowledge of it until after confirmation of the sale and the service of the witness subpoena upon him whereupon he discovered the original process upon search of his files. He prayed in effect that the return of the sheriff of Albemarle County be invalidated, that he be allowed to answer the bill of complaint, that if desired by the beneficiary of the trust that he be permitted to redeem the lien for real estate taxes and if such redemption should take place that the confirmed judicial sale be set aside. The County of Orange filed answer among other things controverting the allegation that service of original process was invalid and resisting the petitioner's prayer for relief. Richard D. Cox, the purchaser at the judicial sale, filed response that he had made full payment for the property and had received a conveyance, duly recorded, for it. There is no allegation or evidence that a false return was somehow procured by the complainant. Other pleadings of no special consequence to a decision on the issues involved were also filed.

Detailed account of the testimonial evidence is not required. Sufficient to say that the petitioner testified positively he was not personally served with original process in this case and the deputy sheriff testified that he was duly qualified as such and positively that as

stated in his return he did serve this process personally on the petitioner. He explained the notation "Cherly Keffer" by saying as he was leaving the petitioner's office he heard him say he usually did not respond to such things and that being puzzled by this he wrote Cheryl's name down as he had seen her in the office in hope she would remember he was there and that her name would trigger his memory of the instance. The petitioner denied that he would ever say he did nothing about such papers and in fact had filed answers in several similar instances.

Cheryl Stevens, nee Keefer, testified she had never observed the petitioner being served with process in the office or been present when he received process from a secretary in the presence of a sheriff but that she had no recollection of any events on the day in question. It also appears from the testimony that one Plastino who was employed by the petitioner's firm for about a year would have been the clerical person testified to by the deputy as being present and calling the petitioner for the purpose of service and who the petitioner surmises received the process and without him being served stuck it in his file of the original real estate transaction. Petitioner testified Plastino had to be let go from employment and that, though looked for as a witness, she was not found.

"A return on a writ or process is the short official statement of the officer endorsed thereon of what he has done in obedience to the mandate of the writ, or why he has done nothing." *Rowe v. Hardy*, 97 Va. 674, 676 (1899). As to returns by an officer, until the contrary is proved the presumption is that he has performed his duty in that regard. *Id.*, 678. From very early times in our law, before Edward I, whose accession was in 1272, a serving officer has had the solemn responsibility of performing a vital and indispensable act for the courts. "Throughout [original and mesne process], the sheriff acts as the Court's minister; he does the summoning, attaching, distraining, arresting . . . ." 2 F. Pollock and F. Maitland, The History of English Law 591 (2d ed. 1899).

Service of process, by whatever method, takes on dimension of vast proportion as it is the legal means of giving notice to a party. It is a rudimentary but profound constitutional principle that due process requires notice to a person of action sought against him before such action may be taken. This requirement can be traced to "the law of the land" concept contained in Chapter 39 of Magna Carta, or

more generally now referred to as "due process of law" which term "first appeared in a statutory rendition of this chapter in 1354. 'No man of what state or condition he be, shall be put out of his lands or tenements nor taken, nor disinherited nor put to death, without he be brought to answer by *due process of law*'." Constitution of the United States of America, Analysis and Interpretation 1281, Senate document No. 99–16, 99th Congress 1st Session (1987). Thus:

> It is the fact of service which gives the court jurisdiction. The return is merely the evidence of the jurisdictional fact. If it fails to show the *facts* as to the service it may be amended to show them, but if there has been no service in fact jurisdiction fails.

*International Brotherhood v. Wood*, 162 Va. 517, 529 (1934). (Emphasis in original.)

At common law the return of an officer was conclusive as to all matters properly contained in it unless it was contradicted by other matter of record in the case or resulted from some fraud. *Sutherland v. People's Bank*, 111 Va. 515, 522 (1910). In a return on which its face showed faulty execution, the court nevertheless said by way of dictum that if it had been executed as required by law and that fact appeared in the officer's return, "then the judgment would have been conclusive, even though the defendants may not have had actual knowledge of the existence of the action before the judgment was rendered." *Goolsby v. St. John*, 66 Va. (25 Gratt.) 146, 156 (1874). Until 1977 this remained the law in this jurisdiction as exemplified by the leading case on the point, *Preston v. Kindrick*, 94 Va. 760 (1897), which said at page 762:

> The risk of opening a judgment or decree on an allegation which, like that of the failure to serve process, or want of notice, depends upon the uncertain testimony of witnesses, is so great that the injured party should be left to his remedy in the same case where relief can be had in that case or to his remedy against the officer who has made the false return, unless that return was in some way procured or induced by the plaintiff, or he is in some way responsible for the defendant's want of notice of the suit, or of the proceeding therein.

The case continues at page 763:

> Such a judgment is sustained, not because a judgment rendered without notice is good, but because the law will not permit any proof to weigh against that which the policy of the law treats as absolute verity, and remits the party injured to his remedy at law against the person by whom the record was falsified.
>
> The presumption that the powers committed to judicial tribunals of general jurisdiction have been properly exercised is essential to the repose and safety of society, and the inconvenience of allowing it to be met and overcome by parol evidence is greater than any benefit that could be derived from a different course.

From the above quotation it appears that the court does not obeisance to the notice requirement of due process and observes it by resort to the legal fiction that a return proper on its face is an absolute verity. The court recognized that there was a split of authority on the matter and found the reasoning of decisions on both sides "not entirely satisfactory."

This principle was soon followed in *Ramsburg v. Kline*, 96 Va. 465 (1898). Then came *Sutherland, supra*, to the same effect, which in support at page 521 cited Minor's Institutes stating the belief that the better opinion was to accept the officer's return as conclusive, leaving an aggrieved party to bring an action against the officer, but acknowledging this was the lesser of two evils and to follow a contrary rule "would work still greater mischiefs." By 1929 *Caskie v. Durham*, 152 Va. 345 (1929), in adhering to the verity doctrine opined that it was "too firmly entrenched in our jurisprudence to permit its uprooting." Note is made that these cases were decided when Code provisions going back at least as early as the Code of 1887, § 3207, and carried over into Code of 1919, § 6041, provided that the return of an officer was merely "evidence of the manner and time of service."

Title 8 on Civil Remedies and Procedure in the Code of 1950 was revised in 1977 to uproot by statute the doctrine which the court was unwilling to, the revised provision remaining unchanged since its adoption being presently § 8.01–326 which expressly provides that a return shall not be conclusive:

> No return shall be conclusive proof as to service of process. The return of a sheriff shall be prima facie evidence of the facts therein stated, and the return of a qualified [private] individual under subdivision 2 of § 8.01–293 shall be evidence of the facts stated therein.

The Revisers' Note sets forth that this new section abolishes "the anachronistic verity rule" of former case law.

If complaint be made of much discussion of a doctrine no longer applicable, response is made that if one does not know where he has been it is difficult for one to know where he is now. No cases seem to have been decided under the new statute, so we are now at a point where there is a new statute blazing a new trail from the base of an old statute and previous case law. The statute does not expressly set up a specific standard of proof necessary to overcome the statements in a sheriff's return. It does, however, give a sheriff's return the status of prima facie evidence of those statements. This is somewhat stronger that the previous statutory provisions that the return of service of an officer was "evidence of the manner and time of service," which provision applied equally to a return made by any other person when verified by an affidavit.

Because of the importance of service of process, because of the unsettling, disruptive and dangerous effects on the administration of justice inherent in setting officers' returns at naught on largely or exclusively parol evidence, because of the common law tradition affording near sanctity to an officer's return, because of the influence of the strong affirmance of that tradition by adherence to the verity doctrine expressed in the several extant Virginia cases, because present statute law creates a prima facie presumption of correctness as to the facts stated in an officer's return, because the same statute elevates in evidentiary dignity and reliability an officer's return over and above even the verified return (§ 8.01–325) of a qualified non-official individual, and because gross dereliction of duty or fraud of a sworn officer are implied in cases of incorrect returns of process, it is the opinion of the court that to overcome the facts stated in an officer's return requires more than just a preponderance of the evidence. It requires clear and convincing evidence. This conclusion is consonant both with the express legislative intent that, contrary to former case law, a return not be conclusive and with its intent, consistent with case law, to grant especial respect to an officer's return.

The complainant cites cases from other jurisdictions which sustain the principle that successful impeachment of the return of an officer must be by clear and convincing evidence, and no authority to the contrary is cited by either party. Thus *Weinreich v. Walker*, 203 A.2d 854, 856 (Md. 1964), held:

> It is firmly established that a court will not set aside an enrolled judgment unless the proof of the existence of one or more of the grounds permitting such action is clear and convincing . . . . [T]he affirmative testimony of the official process server acting in the regular routine of duty without a motive to misrepresent must be preferred to the negative evidence of one claiming not to have being served "from public policy as well as upon the rules of probability."

Likewise in the Illinois case of *Isaacs v. Shoreland Hotel*, 188 N.E. 776, 778 (Ill. App. 1963), where like our statute the rule is that a sheriff's return is prima facie proof, the court said:

> However, in Illinois the sheriff's return is *prima facie* proof of service and can be overcome only by clear and convincing proof . . . since "[a] sound public policy, the security of litigants and the stability of legal proceedings demand that the return of the sworn officer shall not be set aside or impeached except upon satisfactory evidence. Every presumption in favor of the return is indulged, and it will not be set aside upon the uncorroborated testimony of the party upon whom service purports to have been made."

(Citations omitted.)

Further *Chader v. Wilkins*, 284 N.W. 183, 185 (Ia. 1939), quoting from another Iowa case says:

> It is well settled in this state, and doubtless in all other jurisdictions, that a very strong presumption obtains in favor of the return of an officer, and that it cannot be impeached except by a very clear and satisfactory proof.

(Citations omitted.) The case continues stating, "Memory is at best frail, and the official return of service is by far the most trustworthy evidence."

This being the law, and the evidence seeking to impeach the return of the officer not reaching the evidentiary standard of clear and con-

vincing, the disputed service of process is held to be good and valid. That holding goes a long way to answer the other contentions of the petitioner-trustee, first that the right of redemption was denied to the trustee and the beneficiary, and second that lack of service on the beneficiary as such is near fatal to binding it in this proceeding.

"A trustee in a deed of trust is authorized to act with reference to the trust property only in the manner which the deed either by express terms or by necessary implication provides." *First Funding Corp. v. Birg*, 220 Va. 326, 333 (1979). His powers and duties are "limited and defined, by the instrument itself." *Powell v. Adams*, 179 Va. 170 (1942). The deed of trust is not in evidence and no other evidence in the case indicates that the trustee would have a right of redemption, so no such right in him is found. Furthermore, it is well known that deeds of trust, unless it be an exceptional one, do not confer on a trustee the authority to redeem land from the lien of real estate taxes or from sale to enforce those taxes.

Assuming the beneficiary has such a right, that right would in this case be dependent on whether the beneficiary's interests generally, including any right of redemption, have been cut off by virtue of the service of process on its representative, the deed of trust trustee.

The *Powell* case cited above is also authority for the proposition that a deed of trust trustee is the agent of both the debtor and the creditor, and *Smith v. Credico Industrial Loan Co.*, 234 Va. 514 (1987), and *Whitlow v. Mountain Trust Bank*, 215 Va. 149 (1974), are both authority that a deed of trust trustee is a fiduciary for both the debtor and the creditor. The trustee here being both agent and fiduciary for the secured creditor, service of process on him would be adequate to bind the creditor in this case, particularly in view of the fact that § 58.1–397 sanctions non-service on the beneficiary under a deed of trust if the trustee is made a party to proceedings to sell real estate for delinquent taxes on it. Hence, as a result of that service, the beneficiary has been bound by the actions of the court and cannot now assert any right of redemption.

It is true that, in suits to enforce a mechanics lien, both the trustee and the beneficiary of an antecedent deed of trust are necessary parties. *Mendenhall v. Cooper*, 239 Va. 71, 75 (1990). That rule represents perhaps the better practice and the polity of our courts. The legislative polity as embodied in the statute, § 58.1–397, while it passes muster, is not one which this court would choose.