# CIRCUIT COURT OF LOUDOUN COUNTY

Loudoun County
Board of Supervisors

v.

Renee Jefferson et al.

October 20, 2011

Case No. (Civil) 57182

By Judge Thomas D. Horne

Plaintiff commenced this action seeking injunctive relief on July 31, 2009. At issue is property, located at 43596 Wild Ginger Terrace, Leesburg, Virginia (the Property), that is part of the Loudoun County Affordable Dwelling Unit Program (ADU Program). The Property is presently in foreclosure. Plaintiff asks that the Court grant a permanent injunction requiring Defendant Samuel I. White, P.C., Substitute Trustee, to comply with the restrictions imposed by Chapter 1450 of the Codified Ordinances of Loudoun County (Chapter 1450) and the Corrected Declaration of Affordable Dwelling Unit Covenants (ADU Covenants) in conducting any sale or transfer of the Property. Plaintiff also asks that the Court award it attorney's fees pursuant to Article VI of the ADU Covenants.

### Factual Background

Pursuant to Virginia Code § 15.2-2304, Loudoun County has enacted an affordable housing dwelling unit program by amendment to the zoning ordinances. The ordinances are found in Article VII of the County Zoning Ordinance and Chapter 1450. Chapter 1450 provides that the Affordable Dwelling Unit Advisory Board, consisting of members appointed by the plaintiff, has the authority to regulate the sale of affordable dwelling units (ADUs). Once the ADUs are constructed, they are marketed to persons meeting the eligibility criteria set forth by the County, which includes a

requirement that the applicant's household income is greater than 30% but less than 70% of the median income for the Washington Primary Metropolitan Statistical Area. *See* Chapter 1450.01. Chapter 1450.08(a)(1) requires that certain covenants be recorded for each ADU sold.

On August 19, 2003, Lansdowne Community Development, L.L.C., recorded a Declaration of Affordable Dwelling Units Covenants among the land records of Loudoun County. These covenants mistakenly omitted the Property; however, a Plat recorded at the same time with the Deed of Subdivision, Dedication, Easement, Supplementary Declaration, Conveyance, and Vacation shows that the Property was intended to be designated as an ADU. On March 16, 2004, Lansdowne Community Development, L.L.C., conveyed the Property to BL Homes Lansdowne, L.L.C., and to Van Metre Lansdowne Investments, L.L.C., by Deed of Conveyance. The Property was then conveyed to BL Homes Lansdowne, L.L.C., by Deed of Partition. On October 1, 2004, a Corrected Declaration of Affordable Dwelling Units Covenants was recorded among the land records, which included the Property.

Defendant Renee Jefferson applied to the County's ADU Program in August 2004. Ms. Jefferson represented in her application that she was separated from her husband and received an annual salary of $38,000 plus $58 per week in child support. Ms. Jefferson was approved as a qualified purchaser on September 23, 2004, and received a Certificate of Qualification to participate in the ADU Program. On November 16, 2004, Renee Jefferson acquired the Property by Deed for a purchase price of $152,203. Ms. Jefferson granted a purchase money deed of trust to Bank of America, N.A., to secure an indebtedness of $147,636.

On April 27, 2005, by Deed of Gift, Ms. Jefferson conveyed the Property to herself and her husband, Maurice Jefferson. The Jeffersons then refinanced the mortgage to the fair market value of the Property and granted a Deed of Trust on the Property to AccuBanc Mortgage, a division of National City Bank of Indiana, to secure an indebtedness of $308,800. The Deed of Trust was recorded on May 13, 2005. On May 12, 2008, Samuel I. White, P.C., was substituted as the Trustee. On September 27, 2011, the Court entered an Order reflecting that PNC Mortgage is the successor-in-interest to National City Mortgage Co. and adding PNC Mortgage as a party. In addition to the Deed of Trust now held by PNC Mortgage, the Jeffersons granted a subordinate Credit Line Deed of Trust on the Property to USAA Federal Savings Bank, with Francis E. Mroz as Trustee, to secure an indebtedness of $72,000. This Deed of Trust was recorded on July 9, 2007.

In June 2005, the Human Services Committee for the plaintiff met to discuss a proposed amendment to Chapter 1450 and the ADU Covenants that would prohibit an ADU owner from taking out a mortgage that exceeds the purchase price for their house. The amendment was proposed to address

a trend among ADU owners to take out a second mortgage or refinance on the difference between the purchase price and the market value of the house, as the Jeffersons did. In July 2005, the plaintiff voted unanimously to amend Chapter 1450. Section 1450.08(a)(1)(F) was then added to Chapter 1450, which provides that:

> The total aggregate amount of principal and accrued interest for all financing secured by an ADU shall not exceed the owner's purchase price (as adjusted in accord with Section 1450.08(a)(3), as amended). Any financing in excess of the owner's purchase price (as adjusted in accord with Section 1450.08(a)(3), as amended) shall not be secured by any interest in the applicable ADU.

The covenants recorded against ADUs were also amended to include the above restriction.

The Jeffersons have defaulted on the Deed of Trust to PNC Mortgage. On February 26, 2009, John E. Rinaldi, counsel for PNC Mortgage and Samuel I. White, P.C., sent a letter to the plaintiff informing the plaintiff of their right to cure the default within sixty days. The letter states that the amount due is $322,206.75. On March 20, 2009, John W. White, on behalf of the plaintiff, replied to Mr. Rinaldi's letter and offered to cure the default by purchasing the Property for the current ADU controlled sales price of $167,525.00. The offer was conditioned on the lender first notifying the County that the unit was available for sale under Chapter 1450.08(a)(2) and offering the Property exclusively through the County at the ADU assessed value to qualified purchasers. The offer was further conditioned on approval by the plaintiff to buy the Property at the ADU assessed value if no qualified purchaser committed to the purchase during the sixty day marketing period. Samuel I. White, P.C., did not accept the plaintiff's offer and has taken the position that, as Substitute Trustee, they are obligated to obtain the highest bid price for the Property at public auction. It should be noted that Lansdowne on the Potomac Homeowners Association, Inc., and Loudoun Water also have recorded liens on the Property; however, these liens are subordinate to the Deed of Trust.

## Analysis

The Court must decide whether there is any authority to enjoin Samuel I. White, P.C., Substitute Trustee, from selling the Property at foreclosure to the highest bidder.

Section 55-59 of the Virginia Code prescribes how a deed of trust is to be construed and enumerates the duties of the parties. It provides in relevant part that:

> Every deed of trust to secure debts or indemnify sureties is in the nature of a contract and shall be construed according to its terms to the extent not in conflict with the requirements of law. Unless otherwise provided therein, it shall be construed to impose and confer upon the parties thereto, and the beneficiaries thereunder, the following duties, rights, and obligations in like manner as if the same were expressly provided for by such deed of trust. . . .
>
> 7. In the event of default in the payment of the debt secured, or any part thereof, at maturity, or in the payment of interest when due, or of the breach of any of the covenants entered into or imposed upon the grantor, then, at the request of any beneficiary, the trustee shall forthwith declare all the debts and obligations secured by the deed of trust at once due and payable and may take possession of the property and proceed to sell the same at auction at the premises or in the front of the circuit court building . . . as the trustee may select upon such terms and conditions as the trustee may deem best.

This statute is consistent with well-settled law that "[t]he powers and duties of a trustee in a deed of trust given to secure the payment of a debt are limited and defined by the instrument under which he acts." *Powell v. Adams*, 179 Va. 170, 174 (1942). *See also Schmidt & Wilson, Inc. v. Carneal*, 164 Va. 412, 415 (1935) (providing that "the powers of the person foreclosing under a mortgage or deed of trust are limited and defined by the instrument under which he acts, and he has only such authority as is thus expressly conferred upon him, together with incidental and implied powers that are necessarily included therein").

Paragraph 22 of the Deed of Trust at issue provides that, if the lender invokes the power of sale, the "Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines."

It is clear from *Powell* that Samuel I. White, P.C.'s duties are limited to those set forth in the Deed of Trust. Nothing in the Deed of Trust suggests that the plaintiff can alter Samuel I. White, P.C.'s duty to accept the highest bid for the Property. To the contrary, the Deed of Trust is very clear that the Trustee is to sell the Property to the highest bidder. Moreover, nothing in § 55-59 suggests that the plaintiff can alter Samuel I. White, P.C.'s duty to accept the highest bid for the Property. The Court finds therefore that there is no authority under the Deed of Trust or § 55-59 to enjoin Samuel I. White, P.C., from selling the property at public auction to the highest bidder.

Unable to find authority in the Deed of Trust or § 55-59 to enjoin Samuel I. White, P.C., the plaintiff attempts to create duties upon the Substitute

Trustee from the ADU Covenants and Chapter 1450. The ADU Covenants recorded against the Property provide, in relevant part, as follows:

> During the Resale Control Period, no Transfer of any of the ADUs . . . shall be made at a sales price in excess of the maximum sales price permitted pursuant to the Ordinance. [Article II.A.]
> During the Resale Control Period, no Transfer of any of the ADUs . . . shall be made except in compliance with all other requirements of the Ordinance, including, without limitation, the obligation to offer each of the ADUs exclusively through the County for sixty (60) days. [Article II.B.]. . . .
> During the Control Periods, all lenders or other parties who have or may seek to place a lien on any of the ADUs shall provide to the County, or their successors, written notice of any delinquency or default under any mortgage, deed of trust, or other instrument or agreement that may permit a lien to be filed against any of the ADUs, and shall offer the County at least sixty (60) days in which to cure any such delinquency or default. [Article II.D.]
> During the Control Periods, these Covenants shall be senior to all instruments subsequently recorded on the Property or any of the ADUs, and shall be binding upon all Transferees; provided, however, that, if any ADU is sold to a bona fide purchaser for value at a foreclosure sale or if a lender accepts a deed in lieu of foreclosure, the restrictions contained in these Covenants with regard to such ADU shall terminate if all requirements of the Ordinance have been satisfied, including the obligation of the secured lender benefited by the foreclosure to provide the County with the Right to Cure. [Article II.E.]

Plaintiff appears to concede that the added covenant and amendment to Chapter 1450 in July 2005 cannot be applied retroactively to the Jeffersons. Plaintiff, however, equates a foreclosure sale with a resale and contends that, under the resale restrictions found in the above covenants, the Substitute Trustee is required to sell the Property through the County to a qualified purchaser at the ADU assessed value and to offer the County the right to cure the default at the ADU assessed value if a qualified purchaser does not buy the Property.

The Court believes that there is a clear distinction between ADUs that were refinanced before the July 2005 amendment to Chapter 1450 and those refinanced thereafter. Prior to the amendment and the corresponding covenant added against ADUs, an ADU homeowner was not restricted on

how much they could borrow against their home. And, the only limitation on a lender was found in Article II.D., a limitation which does not restrict the amount of a lien that a lender can place on an ADU. Any such limitation on a lender only arises when property is transferred pursuant to a deed of trust that incorporates the amended Chapter 1450 and the additional covenant. Because the Property in this case was transferred prior to the July 2005 amendment, PNC Mortgage and Samuel I. White, P.C., can only be bound by the restrictions in place at that time.

The Court further believes that a foreclosure is not a transfer as contemplated by the resale restrictions in the ADU Covenants. "Where . . . the terms of an agreement are clear and unambiguous . . . the plain meaning will be ascribed to it. And, specific words in a covenant will be given the common, ordinary meaning attributed to them at the time when the instrument containing the covenant was executed." *Marriott Corp. v. Combined Properties, Ltd. Partnership*, 239 Va. 506, 512 (1990). The resale restrictions found in the covenants do not mention foreclosure sales. The only mention of foreclosure is in Article II.E. and Article VIII. Article II.E. is provided above and Article VIII, consistent with Article II.E., provides that the covenants "cannot be amended, or released, unless by written instrument executed by the County, until expiration of the Control Periods, except with respect to a foreclosure conducted in accordance with the Ordinance." In this case, it appears that the foreclosure was being conducted in accordance with the County Zoning Ordinance and Chapter 1450, as the County was offered sixty days to cure the default. Nothing in the ordinances or covenants expressly limits the amount required to cure a default to the ADU assessed value.

The Court finds therefore that the plain language of the ADU Covenants and Chapter 1450 does not in any way alter Samuel I. White, P.C.'s duty to sell the Property at public auction to the highest bidder. The Court, noting the doctrine of *expressio unius est exclusio alterius*, finds it significant that the ADU Covenants and Chapter 1450 do not reference foreclosure in the resale restrictions but reference foreclosure in other provisions. Even more significant, however, is the underlying requirement that a trustee act in accordance with the powers and duties set forth in the deed of trust. Under the Deed of Trust at issue, Samuel I. White, P.C., is required to sell the Property at public auction to the highest bidder and nothing in Chapter 1450 or the ADU Covenants at the time the Property was transferred altered this requirement.

## Conclusion

Accordingly, the Court finds that there is no authority for it to enjoin Samuel I. White, P.C., from selling the Property at foreclosure to the highest bidder and therefore denies the relief sought by the plaintiff.